(No. 7157. June 23, 1944.)

BENJAMIN B. MOON, Appellant, v. AMELIA JANE BULLOCK and AMELIA JANE BULLOCK, Executrix of the Estate of Arthur T. Bullock, deceased, Respondents.

BLANCHE MOON and NORMA JOYCE MOON, an infant, by her guardian ad litem, Blanche Moon, Appellents, v. AMELIA JANE BULLOCK and AMELIA JANE BULLOCK, Executrix of the Estate of Arthur T. Bullock, deceased, Respondents.

[151 P. (2d) 765.]

Rehearing Denied October 3, 1944.

Vernon K. Smith and Walter Oros for appellants.

Frank Estabrook, Richards & Haga, J. L. Eberle and B. S. Varian for respondents.

BUDGE, J.—Two actions were filed by appellants against respondents, one by Benjamin B. Moon against Amelia Jane Bullock and Amelia Jane Bullock, Executrix of the Estate of Arthur T. Bullock, deceased, and the other by Blanche Moon and Norma Joyce Moon, an infant, by her guardian ad litem, Blanche Moon, against Amelia Jane Bullock and Amelia Jane Bullock, Executrix of the Estate of Arthur T. Bullock, deceased. Demurrers to the complaints were interposed in both of the above actions. Each appeal is from a judgment of dismissal rendered after demurrers were sustained to the complaints, appellants declining to plead further, and the judgments of dismissal having been entered.

The two actions present the same questions and, by stipulation of counsel, were consolidated for the purpose of this appeal.

Briefly, the facts alleged are substantially as follows: On October 6, 1941, two automobiles collided at the intersection of what is commonly known as the Meridian-Eagle

Road and the Ustick Road. One car was driven by Arthur T. Bullock, who died enroute to the hospital, and the other car was driven by Benjamin B. Moon. With Moon was his father, Edwin Freeman Moon, who also died enroute to the hospital. Amelia Jane Bullock, widow, is executrix of the estate of Arthur T. Bullock, deceased, and was not with him at the time of the accident. Blanche Moon is the widow, and Norma Joyce Moon is the infant daughter of Edwin Freeman Moon. The Moons seek to recover damages on the theory that Arthur T. Bullock, deceased, violated the laws of the road, and that his alleged negligence was the cause of the accident, resulting in the death of Edwin Freeman Moon, personal injury to Benjamin B. Moon, and damage to the Moon car.

The Moons filed creditors' claims for damages against the Bullock estate. The claims were rejected, payment being refused, whereupon Benjamin B. Moon brought his action, and under his amended complaint seeks to recover from the widow as a member of the marital community, and from the estate of the deceased husband damages to personal property and for personal injuries, loss of time during illness, for hospital bills and medical care. Benjamin B. Moon brought his action under the general law. Blanche Moon brought her action in behalf of herself and her infant daughter under sections 5-310 and 5-311, I. C. A., and against the widow, Amelia Jane Bullock, personally, and as executrix of the Bullock estate, and seeks to recover for the loss of husband and father, for funeral expenses and costs necessarily incurred as the result of the death of Edwin Freeman Moon, her husband.

The district judge, before whom the actions were tried, with great care and after careful research and examination of the numerous authorities to which his attention was called, and others, prepared a memorandum decision wherein he sets out clearly and logically his reasons, supported by authorities, for the conclusions he reached. In the course of this opinion I shall take the liberty of quoting excerpts, with which I agree, from Judge Koelsch's memorandum decision.

In my judgment the pertinent questions here presented for consideration and determination are, first, does the general common law rule that a cause of action for a tort abates with the death of the tort-feasor or upon the death of the person against whom the wrong was committed obtain, or

did it ever obtain in this jurisdiction; and, second, what causes of action survive the death of either or both of the parties?

The learned trial judge, in answering the above questions, uses the following language:

"Under the common law the death of either party to a civil action causes the abatement of a pending action. In such an event the action is dead and cannot be continued by the substitution of a representative. The only way such an action can be revived is by the bringing of a new action; and only actions in which the cause of action survives can be thus revived. *(Gordon v. Hillman,* (Wash.) 186 P. 651; *Chilcote v. Hoffman,* (Ohio) L. R. A. 1918 D. 575.)·

"To prevent the, delay and expense incident to the bringing of a new action, our Code provides:

" 'An action or proceeding does not abate by the death or any disability of a party, or by the transfer of any interest therein, *if the cause of action or proceeding survive or continue.* In case of the death or disability of a party, the court, on motion may allow the action or proceeding to be continued by or against his representative or successor in interest.' (Sec. 5-319, I. C. A.)

"Clearly the only change that this statute has wrought in the common law, is that in the case of the death (the only contingency here pertinent) of a party to a pending action, the action may be continued by a substituted party, and it will not be necessary to commence a new action; *provided, that only actions wherein the cause of action survives, may be so continued.* The statute is not a general survival statute; it still recognizes the general common law rule that certain actions and causes of action die irretrievably with the death of a party. *(Kloepfer v. Forch,* 32 Ida. 415, 184 P. 477; *McLeod v. Stelle,* 43 Ida. 64, 249 P. 254.)

"The latter case was for the recovery of money paid for mining stock, under deceit and false representations. In addition to the plaintiff's own claim, there were thirty-one assigned accounts, each set up in a separate cause of action. The assignability of these thirty-one accounts was questioned. This assignability was held to be contingent upon 'the same principle as the survival of a cause of action. Thus, if it survives, it may be assigned; if not, it may not.' (Note: See 1 C. J. S., Sec. 132, p. 179.)

Continuing, Justice Taylor, who wrote the opinion of the Court, says:

" 'Broadly stated and referred to in *Kloepfer v. Forch,* (supra,) actions of a personal nature are not assignable. A long line of authorities has established this principle. Some cases have held that an injury suffered by fraud, false representations, or deceit is of such personal nature, does not survive, and is not assignable. This was not involved in the Kloepfer case, and not therein decided or necessary to the decision. The later, and to me the better considered cases have tended toward, and many of them have reached, the conclusion that the injuries (sic) of a personal nature which do not survive are such as injury to person, malicious prosecution, false imprisonment, libel, slander, and the like; and that an injury which lessens the estate of the injured party does survive, and thus is assignable.'

"Justice Taylor then bases his conclusion that the thirty-one assigned accounts are such as would survive and were therefore assignable, upon the ground that the acts therein alleged did diminish the estates of the parties defrauded, a question I shall again hereinafter refer to. Though it may be questionable whether the facts of the case justify Judge Taylor's conclusion, it must be conceded that his statement of the general rule of survivability of causes of action at common law, is correct. (1 C. J. S. 165, Sec. 115; *Bortle v. Osborne,* (Wash.) 285 P. 425, 67 A. L. R. 1152.)

"Nor is there here in the cases at bar any contention that that is not a correct statement of the common law on the subject. The contention here, however, is that that part of the common law never became a part of the law of this state because it is in conflict with constitutional and statutory provisions of this state. In support of this contention reference is made to Sec. 70-116, I. C. A., which declares that the common law of England so far as not inconsistent with the constitution or law of the United States, is the rule of decision in all cases not provided for by the statutes of this state (Sec. 2 of Art. XXI, Cons.) ; to Sec. 70-102, I. C. A., prescribing a liberal construction of our statutes and abrogating the commonly accepted rule that statutes in derogation of the common law must be strictly construed; to Sec. 18 of Art. 1 of the Constitution of this state, declaring that the courts of this state shall be open to every person and that a speedy remedy shall be provided

for every injury of person, property or character; and, finally, to Sec. 70-113, I. C. A., which directs that words and phrases are to be construed according to the context in which used, and according to their approved usage.

"Reference is also made to Sec. 5-319, I. C. A., the same section that I referred to hereinbefore. This reference by counsel to Sec. 5-319, in my judgment is unfortunate, for it is my opinion that that statute refutes all the argument made. The whole contention here is that under Idaho law all actions and causes of action, of whatsoever nature, survive the death of either party. It is in pursuance of this contention that the actions at bar were commenced, for, as already stated, both of these actions are based upon a tort committed by a tort feasor who died before the bringing of the action, and involve injuries to person and to property. But Sec. 5-319, I. C. A., as I pointed out hereinbefore, is not a survival statute; it recognizes that some actions abate by the death or disability of a party—otherwise why the proviso: 'if the cause of action survives or continues'?

"Another statute, to which I shall hereinafter again divert, offers further recognition by our Code of the common law rule that the tort dies with the death of either party. I refer to * * * Sec. 5-311, I. C. A.

"The logic employed by counsel that under Sec. 18 of Art. 1 of our constitution the courts of this state must afford a remedy for 'every injury of person' applies as well to the death of a person caused by the wrongful act or neglect of another, as it does to any other injury to person. Yet, the legislature found it necessary to specifically provide that the death of a person caused by the wrongful act of another shall afford a cause of action against such other, and, under certain conditions, against his employer. I concede that, strictly speaking, an action for the death of a person by the wrongful act of another, involves no question of the survivability of a cause of action, for under the common law there was no such action." * * * Sec. 5-311, I. C. A., "created a right to a cause of action where none existed before. Counsel's argument, however, in effect, is that under Sec. 18 of Art. 1 of the Constitution an action for wrongful death could be maintained in Idaho in the absence of Sec. 5-311, I. C. A. 'For' such is counsel's argument, 'does not the constitution say that "The Courts must afford a remedy for every injury?" And is not Sec. 18 of Art.

I of the constitution self executing? (*S. v. Waterman,* 36 Ida. 259, 210 P. 208; *S. v. Montroy,* 37 Ida. 684, 217 P. 611; *Day v. Day,* 12 Ida. 556, 86 P. 531; 12 C. J. 700 and 729.) And does not Sec. 70-113, I. C. A., command that words and phrases are to be interpreted according to their approved usage? It follows, therefore,' so the argument continues, 'that the common law rule that there is no remedy for an injury to the person after the tort feasor's death, is inconsistent with the referred to provision of our constitution which demands that the courts must afford a remedy for every wrong to person,' etc.

"This untenable argument results from counsel's literal construction of the constitutional provisions, without reference to the historical back-ground of our jurisprudence, and in disregard of the outstanding features of our constitutional system, namely, the division of our government into three co-equal departments, and prohibition of the exercise by any one of them of powers properly belonging to either of the others (Sec. 1, Art. II.) Sec. 18 of Art. I is directed to the courts. If the courts are thereby commanded to create a remedy for a wrong where no remedy existed theretofore; or if they are to recognize a cause of action which abated by reason of the death of a necessary party to it, they would in many instances be called upon to legislate; it would often require them to modify or entirely override positive and well-established rules and laws. The books are full of instances where the courts have had to admit that existing law—statutory or common—did not do exact justice, or did not meet with our revised ideas of justice, but that the remedy lay, not with the courts, but with the legislature.

"I cannot so interpret Sec. 18 of Art. I. It grants no new rights, modifies no existing law, and prescribes no new duties. It merely admonishes the courts to administer 'right and justice without sale, delay or prejudice.' It does not, and was not intended to enlarge or to extend the rights or the remedies of the citizen. Its purpose and effect are to secure to the citizen the rights and remedies that the law as it then existed, or as it might be changed from time to time by the legislature, afforded. To illustrate, I would again refer to * * * Sec. 5-311, I. C. A. If that statute were not upon our books, would Sec. 18 of Art. I authorize the bringing of an action for damages for the death of one person through the wrongful act or neglect of another?

" 'Except for this statute,' says our Supreme Court, 'no such action could be prosecuted in this state and no such action could accrue in this state.' (*Whitley v. Spokane and Inland Ry. Co.*, 23 Ida. 642, 132 P. 121; *Spokane and Inland Ry. Co. v. Whitley*, 237 U. S. 437, 59 Law ed. 1060.)

"I would call attention to the fact that this statute limits the action to one against the 'person causing the death' (or, not pertinent here, under certain circumstances, also against the one responsible for the conduct of the tort feasor.) Suppose such person, that is, the tort feasor, is dead?

"Counsel cites two cases which it might be conceded hold directly contrary to the conclusion reached by me by the foregoing process of reasoning: (*Waller v. First Sav. and Tr. Co.*, (Fla. 138 So. 780; *in re Estate of Grainger*, (Neb.) 237 N. W. 153, 78 A. L. R. 597.)

"The Nebraska case is not strictly in point, and in my judgment the opinion in the case is very unsatisfactory. The case is not in point because Nebraska has a general survival statute which enumerates the only causes which abate, as follows: 'No action pending in any court shall abate by the death of either or both of the parties thereto, except an action for libel, slander, malicious prosecution, assault, or assault and battery, for a nuisance, or against a justice of the peace for misconduct in office, which shall abate by the death of the defendant.' I construe that statute to use the word 'Abate' in the sense of irrevivability. It does not appear whether Nebraska has a statute the equivalent of" * * * Sec. 5-311, I. C. A., "but the court after stating that 'There has been a noticeable deviation from the common law rule as applied to a tort committed by one who subsequently came to his death,' continues by saying that it has been held that a cause of action does not abate with the death of the person injured, and that such injured person's estate or surviving relatives may recover from the wrongdoer for damages sustained by his death, meaning, of course, the death of the person injured. The authorities that have come to my attention do not support this statement by the Nebraska court, unless it intended to confine the same to cases in which the person died from injuries inflicted by the tort feasor. If he died from other causes, his cause of action expires with him. (*Boyd v. Sibold*, (Wash.) 109 P. (2d), 535.)

"And, apparently, the court accepts the argument

made by the claimant (plaintiff) 'That it is not an equal protection of the law to deny to her the right of recovery against the decedent's estate when under our decisions, as noted above, the right to recover from a living tort feasor has been granted to a dead person's estate.' Conceding that that argument is good under Nebraska law, it is not so in Idaho, for here no right of action is given to the estate of the victim of a tort, but is granted only to his heirs, and then only if the cause of his death was the wrongful act of the tort feasor. If there are no heirs, no right of action vests in anybody. (*Whitley v. Spokane, etc. Ry.*, supra; see also *Tuttle v. Short*, (Wyo.) 288 P., 529.)

"Though thus apparently basing its conclusion on the ground that the denial to the plaintiff, under the facts of the case, of a cause of action against the estate of the deceased tort feasor, would be a denial of the equal protection of the law, the court does not specifically say so. It merely says that 'We do not think that the claimant should be precluded from presenting the facts pertaining to the accident and her injuries' and reverses the case with direction to permit her to do so.

"It is not quite clear to me whether the Florida case of *Waller v. First Sav. and Trust Co.*, supra, is strictly in point. The survivorship statute of Florida reads thus:

" 'All actions for personal injuries shall die with the person, to wit: Assault and battery, slander, false imprisonment, and malicious prosecution; all other actions shall and may be maintained in the name of the representatives of the deceased.'

"It must be conceded that the case holds that in Florida a 'cause of action for purely compensatory damages for personal injuries does not die with the tort feasor, but survives against his personal representative.' But this conclusion is reached, in part at least, from a construction of a quoted survivorship statute. Indeed, Justice Whitfield in his specially concurring opinion, bases his concurrence on the ground that the statute has abrogated the common law rule. He analyzes the statute correctly, in my opinion, thus:

" 'Sec. 4211 Comp. Gen. Laws, provides that actions for enumerated classes of personal injuries "shall die with the person," and that "all other actions shall and may be maintained in the name of the representatives of the deceased," which latter quoted phrase, considered with the preceding

provision of the section, means that all actions for personal injuries other than those stated in the statute, shall *survive* and may be maintained in the name of the representatives of the deceased.' [*Waller v. First Sav. & Trust Co.*] "(138 So. 789) or against such representatives. And, as stated, the majority of the court arrives at its conclusion in part through its interpretation of the statute, as shown by its quoting from Justice Terrell's dissenting opinion in the former case of *Close v. Cunningham* [128 So. 429], the following:

"'I think the purpose of the statute here brought in question was to enlarge the rule of the common law for the survival of actions for personal injuries. For the purpose of merely re-enacting that rule it was unnecessary. . . This holding is not only supported by the better reasoning, but it is in harmony with the trend of survival statutes in this country.' (138 So. p. 787.)

"If the Florida decision is based upon an interpretation of that statute, it is not in point here, because the only statute we have in Idaho on the survivability of causes of action (Sec. 5-319) does not admit of that" construction.

\* \* \* \* \* \*

"But, with what law here in Idaho, does the rule that the tort dies with the tort feasor, conflict?

"Counsel answers this question, as does the Florida court, by the argument that the absence of the right to hold the estate of the deceased tort feasor liable for damages caused by the tort, is contrary to our modern ideas of natural justice; that we have evoluted and progressed so far upward that the idea that the denial of the right to recover damages from the estate of a deceased tort feasor, is shocking to us. I reply, What could be more shocking to us than the denial of a cause of action to the dependent heirs of a man whose death was brought about by the wrongful act of another—perhaps by one well able to respond in damages? And yet, says our Supreme Court, and the courts in general, there is no such cause of action unless specifically authorized by statute. (*Whitley v. Spokane etc. Ry.*, supra; *Bortle v. Osborn*, (Wash.) 285 P. 425, 67 A. L. R. 1156; *Public Service Co. v. Tackett*, (Ind.) 47 N. E. (2d) 851.)

\* \* \* \* \* \*

"The declaration in the Bill of Rights that courts

shall afford a remedy for 'every injury of person, property or character' does not of itself change existing law, and does not empower courts to legislate, or to amend, modify, or repeal laws to meet their ideas of what is 'natural justice.'

"This is exactly what the Florida court does by its decision in *Waller v. First Savings and Trust Co.*, (supra.) It does this under the erroneous view that thereby it is merely overruling its own prior decisions. It overlooks entirely the fact that its decision is the repeal of a law as much a part of the body of laws of the state as any statute.

" 'However, except where altered by statute, it (the common law) is just as much a part of the local jurisprudence as are enactments of the legislature, and where a principle of such law has entered into our form of government, it is controlling until by legislation express in its terms it is modified or negatived by the substitution of a new declaration on the subject.' (15 C. J. S. 613.)

" 'Reverting, then, to our own state, we recognize that no legislative adoption is necessary to affirm the existence of the common law, but the statutory enactment is essential to repeal, abrogate or change the rules or doctrine of the common law. The rules of the common law are not to be changed by doubtful implication. (Citing cases.) But where the implication is obvious it cannot be ignored. No statute is to be construed as altering the common law farther than its words and circumstances import. (*Shaw v. Railroad*, 101 U. S. 557, 25 Law ed. 892.) We must recognize that it is the province of the Legislature, and not of the court, to modify the rules of the common law. (*In re Hulett's Estate*, (Minn.) 69 N. W. 31.) The court has no more right to abrogate the common law than it has to repeal the statutory law.' (*Congdon v. Congdon*, (Minn.) 200 N. W. 82; See also, *In re Hulett's Estate*, 69 N. W. 31; *Jacob v. State*, 3 Hump. (Tenn.) 493.)

"In other words, courts may extend old principles to new conditions, and may determine new or novel questions by analogy, and may even develop and announce new principles made necessary by changes wrought by time and circumstance, but under our constitutional system of government, courts cannot legislate; and they cannot abrogate, modify, repeal or amend rules long established and recognized as parts of the law of the land.

"It is, therefore, my conclusion that the rule of the common law that causes of actions for pure tort—with certain exceptions to be presently noted—expire with the death of either party thereto, has been and still is the law of this state, and is not inconsistent with any of our statutory or constitutional provisions."

■ I am in agreement with the conclusion reached by the learned trial judge that a cause of action, purely in tort, with certain exceptions, abates with the death of the tortfeasor, or, in other words, that the common law rule in this jurisdiction has been abrogated in part, but not entirely, as, for instance, in the State of New York and other states. In New York a legislative provision altered the common law rule, as follows:

"No cause of action for injury to person or property shall be lost because of the death of the person liable for the injury. * * * No cause of action for injury to person or property shall be lost because of the death of the person in whose favor the cause of action existed." (Laws of New York, 1935, chap. 795.)

In this jurisdiction the common law has been abrogated by the provisions of sec. 5-310, I. C. A.:

"The parent may maintain an action for the injury or death of a minor child, and a guardian for the injury or death of his ward, when such injury or death is caused by the wrongful act or neglect of another, but if either the father or mother be dead or has abandoned his or her family, the other is entitled to sue alone. Such action may be maintained against the person causing the injury or death, or if such person be employed by another person, who is responsible for his conduct, also against such other person."

Section 5-311:

"When the death of a person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death; or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just."

Section 15-805:

"Any person or his personal representatives may maintain an action against the executor or administrator of any

testator or intestate who in his lifetime has wasted, destroyed, taken or carried away, or converted to his own use, the goods or chattels of any such person, or committed any trespass on the real estate of such person."

Under the provisions of section 15-805, supra, abrogating the common law rule in this jurisdiction, a cause of action survives against the executrix of the estate of Arthur T. Bullock, deceased, and did not abate upon his death.

"By the early English statutes of 4 Edw. III, chap. 7, and 31 Edw. III, chap. 11, which constitute a part of the common law in the United States, the rule of the common law that all actions in form ex delicto for the recovery of damages abate by the death of either party was so modified as to permit an action in favor of a personal representative for injuries to personal property. * * * We are further of the opinion that the only direct damage to property of the estate in the instant case was the damage to the automobile, and that the hospital bills, doctor's bills, claim for lost wages, and claim for pain and suffering, were consequential damages flowing from the trespass or injury to the person of the deceased in his lifetime, for which no right of action survived at common law, being purely personal to the deceased, and for which there is no recovery * * *." (*Boyd v. Sibold*, 109 P. (2d), 535, 538-9; *Whatcom County v. Schuman, et al*, (Wash.) 121 P. (2d) 378.)

The demurrer was improperly sustained to plaintiff's first cause of action, paragraph 6, the same stating facts sufficient to constitute a cause of action under the statute last above cited.

It was, it seems to me, the intention of the legislature in adopting the provisions of the foregoing section of the statute to modify the common law rule to the extent that where a deceased person had in his lifetime wrongfully destroyed personal property of another to his damage, such person should have a cause of action against the personal representatives of such wrongdoer for the recovery of damages sustained by reason of the wrongful act, and it is immaterial that the deceased has not benefited by the act. Each of the words "wasted, destroyed, taken or carried away" must not only be given some effect, but should be construed in accordance with the plain import of the language used. The chattels might be taken, carried away, or converted without being "destroyed," and the converse is likewise true.

(1 Cal. Jr. P. 74, sec. 43; *George v. McManus,* (Cal.) 150 P. 73; *Barnum v. Jackson,* (Wash.) 5 P. (2d) 497.)

In my opinion there is no escape from holding, under the provisions of sec. 15-805, I. C. A., that an action for the destruction of personal property caused by the negligence of a tort-feasor survives the death of the tort-feasor, although it would not have survived at common law, and a cause of action may be maintained against the legal representatives of the deceased tort-feasor for damages so caused by reason of the deceased tort-feasor's negligence, if any. (*Morrison v. Perry,* (Utah) 140 P. (2d) 772.)

Other questions are urged in appellants' brief, but due to the conclusion herein reached and the disposition made of this case, we do not deem it necessary to discuss them.

The action of the court sustaining the demurrer to the amended complaint of appellant, Benjamin B. Moon, is affirmed, except as to that portion of the complaint wherein he seeks to recover damages for loss of or destruction of certain items of personal property as set out in his first cause of action, paragraph 6, and the cause is remanded with instruction to the court to overrule the demurrer as to said paragraph. Demurrer properly sustained in consolidated case of Blanche Moon and Norma Joyce Moon, an infant, by her guardian ad litem, Blanche Moon, against Amelia Jane Bullock and Amelia Jane Bullock as executrix of the estate of Arthur T. Bullock, deceased. Each side to pay his own costs on appeal.

Holden, C. J., and Ailshie, Givens and Dunlap, JJ., concur.