657 P.2d 476

**William HOLMES, Plaintiff-Appellant,**

v.

**George IWASA, Optometrist; Berkley Bio-Engineering International, a corporation, or Berkley Bio-Engineering, Inc.; Does I through XV; Does XVI through XXX; Does XXXI through XL; Black Corporations I through XV; White Corporations I through XV; and Green Corporations I through XV, Defendants,**

and

**George Iwasa, Optometrist, Defendant-Respondent.**

No. 13459.

Supreme Court of Idaho.

Jan. 13, 1983.

---

A.L. Lyons, of Lyons, Bohner & Chasan, Boise, for plaintiff-appellant.

Michael Moore, of Imhoff & Lynch, Boise, for defendant-respondent.

BAKES, Justice.

Plaintiff appeals from a summary judgment entered in favor of the defendant in this professional malpractice action.

The sequence of events is virtually undisputed. The dispute arises over when the plaintiff's cause of action accrued and when the statute of limitations began to run in this case. The evidence before the district court indicated that plaintiff, William Holmes, initially went to the defendant, Dr. George Iwasa, an optometrist practicing in Weiser and Cambridge, Idaho, on July 24, 1974, for a routine eye examination. Plaintiff complained of headaches and sensitivity to bright lights,[1] but defendant found that

---

1. Plaintiff, who was approximately 47 years old at the time, testified that he had suffered from these problems for years.

plaintiff's glasses were at that time the correct prescription. However, the defendant anticipated that bifocals might be necessary in the future.

Holmes returned to defendant's office on November 19, 1975, again complaining of problems with bright lights and headaches, and that his vision was blurred. Defendant took a history from the plaintiff, conducted an eye examination, including a test for glaucoma which was accomplished by measuring eye pressure with a tonometer, and prescribed bifocals for plaintiff's problems.

Plaintiff delayed ordering his bifocals from Dr. Iwasa until December 22, 1975, when he returned to defendant's office. Plaintiff's eyes were not examined on that date; he merely chose the frames and ordered the already prescribed bifocals. The purpose of plaintiff's next visit to Dr. Iwasa's office was to pick up his bifocals on January 21, 1976. At that time, Dr. Iwasa did not examine plaintiff's eyes but merely fitted the new bifocals to plaintiff's head.

When the new bifocals failed to relieve his symptoms, plaintiff went to see Dr. Howarth, an opthamologist, on January 23, 1976. Dr. Howarth conducted eye examinations and informed plaintiff that, in his opinion, plaintiff was suffering from glaucoma.[2] In his deposition, Dr. Howarth described plaintiff's condition as marked open-angle glaucoma and explained that glaucoma grows progressively worse the longer the condition is present. Dr. Howarth estimated that the glaucoma had been present in plaintiff for at least eight years prior to January 23, 1976.

On December 21, 1977, plaintiff filed complaint against defendant and Berkeley Bio-Engineering International, the manufacturer of the tonometer used by Dr. Iwasa in measuring the pressure in plaintiff's eyes. Berkeley was subsequently dismissed from this action. Defendant, in his motion for summary judgment, alleged that certain counts contained in plaintiff's complaint were inapplicable to a malpractice action and that plaintiff's complaint as a whole was barred by the statute of limitations. The lower court granted defendant's summary judgment motion, based on the statute of limitations, and plaintiff appealed.

Although plaintiff appellant presented several issues on appeal, they all relate to the central issue of whether the district court erred in granting defendant's motion for summary judgment on the ground that the statute of limitations barred plaintiff's claim.

Prior to March 24, 1971, I.C. § 5–219(4), the statute of limitations applicable to professional malpractice actions, in essence provided that an action had to be filed within two years of the alleged professional malpractice; the statute made no reference whatsoever to the interrelationship between the accrual of a cause of action and knowledge of a cause of action. Without the benefit of legislative guidance, this Court adopted the so-called "discovery exception" in cases in which foreign objects were negligently left in a patient's body. In *Billings v. Sisters of Mercy of Idaho,* 86 Idaho 485, 389 P.2d 224 (1964), we held that "the cause of action [in such cases] does not accrue until the patient learns of, or in the exercise of reasonable care and diligence should have learned of the presence of [the] foreign object in his body." *Id.* at 498, 389 P.2d at 232. In *Renner v. Edwards,* 93 Idaho 836, 475 P.2d 530 (1969), *aff'd on rehearing,* we extended the discovery rule to cases of misdiagnosis and held that the statute of limitations did not begin to run until the patient knew or should have known of the physician's misdiagnosis.

However, soon after our decision in *Renner,* and perhaps partly in response there-

---

**2.** Plaintiff had previously seen Dr. Howarth on October 20, 1975, between his visits to Dr. Iwasa, complaining of variable vision. Because plaintiff told Dr. Howarth that his vision was improved upon eating, Dr. Howarth suspected hypoglycemia and told plaintiff to have a glucose tolerance test run. The record indicates that the tests were run and that the results, dated October 28, 1975, were normal, which, according to Dr. Howarth, ruled out hypoglycemia as having an effect on plaintiff's eyesight. Plaintiff, however, did not return to Dr. Howarth until January 23, 1976.

to,[3] the legislature substantially amended I.C. § 5–219(4).[4] 1971 Idaho Sess.Laws, ch. 180, § 1. By amending I.C. § 5–219(4), the legislature narrowed the scope of *Renner* and, in large part, defined when a cause of action accrues for the purposes of applying the statutory period of limitations in professional malpractice actions. Under amended I.C. § 5–219(4), the discovery exception first recognized by this Court in *Billings v. Sisters of Mercy of Idaho,* 86 Idaho 485, 389 P.2d 224 (1964), is limited to cases involving foreign objects and fraudulent concealment.[5] In all other professional malpractice actions, "the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of...." The action must be brought within two years of that time.

The alleged negligent act, occurrence or omission complained of by the plaintiff is Dr. Iwasa's failure to discover plaintiff's glaucoma. The undisputed evidence establishes that Dr. Iwasa examined plaintiff's eyes only on two occasions, July 24, 1974, and November 19, 1975, both dates falling outside the two year period set out in I.C. § 5–219(4). No examinations were performed on plaintiff's two subsequent visits—December 22, 1975, when the bifocals were ordered, and January 21, 1976, when the glasses were fitted to plaintiff's head. Therefore, the question we must decide on appeal is whether, on this record, a material issue of fact exists concerning whether Dr. Iwasa negligently failed to diagnose plaintiff's glaucoma on either December 22, 1975, or January 21, 1976, the two appointment dates within the statutory period of limitations.

In ruling on a summary judgment motion, the facts are to be liberally construed in favor of the party opposing the motion; he is to be given the benefit of all favorable inferences which might reasonably be drawn from the evidence. *Taylor v. Choules,* 102 Idaho 222, 224, 628 P.2d 1056,

3. In ch. 180, § 2, the legislature declared that an emergency existed and that the amendment should become effective upon approval. 1971 Idaho Sess.Laws, ch. 180, § 2.

4. As amended, I.C. § 5–219 provides for a two year limitation on:

"(4) An action to recover damages for professional malpractice, or for an injury to the person, or for the death of one caused by the wrongful act or neglect of another, including any such action arising from breach of an implied warranty or implied covenant; provided, however, when the action is for damages arising out of the placement and inadvertent, accidental or unintentional leaving of any foreign object in the body of any person by reason of the professional malpractice of any hospital, physician or other person or institution practicing any of the healing arts or when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party, the same shall be deemed to accrue when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of; but in all other actions, whether arising from professional malpractice or otherwise, the cause of action shall be deemed to have accrued as of the time of the occur-

rence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer, and, provided further, that an action within the foregoing foreign object or fraudulent concealment exceptions must be commenced within one (1) year following the date of accrual as aforesaid or two (2) years following the occurrence, act or omission complained of, whichever is later. The term 'professional malpractice' as used herein refers to wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation licensed to perform such services under the law of the state of Idaho. This subsection shall not affect the application of section 5–243, Idaho Code, except as to actions arising from professional malpractice. Neither shall this subsection be deemed or construed to amend, or repeal section 5–241, Idaho Code." (Effective March 24, 1971).

5. Legislative intent to confine the discovery exception to cases involving foreign objects and fraudulent concealment is clear. *See Owyhee County v. Rife,* 100 Idaho 91, 593 P.2d 995 (1979); *Martin v. Clements,* 98 Idaho 906, 575 P.2d 885 (1978); *Johnson v. Stoddard,* 96 Idaho 230, 526 P.2d 835 (1974); *Johnson v. Gorton,* 94 Idaho 595, 495 P.2d 1 (1972).

1058 (1981); *Huyck v. Hecla Mining Co.*, 101 Idaho 299, 300, 612 P.2d 142, 143 (1980). The record contains the deposition of Dr. Howarth, the opthamologist who ultimately discovered plaintiff's glaucoma. In response to questions regarding what constitutes treatment, Dr. Howarth stated that if a doctor examines a patient one day and several days later writes a prescription, the latter "would be classed as a treatment, and . . . when you order the glasses, you are instituting the treatment when the glasses are delivered and fit to the patient's face, and you have then completed the treatment as far as the treating of his refractive error is concerned." The record also contains Dr. Howarth's affidavit in which he stated:

> "It is the opinion of this affiant that treatment of a patient commences with the first examination and continues on as long as the problem of the patient is not corrected by the first procedure of the physician or the provider of health care. Eyeglasses themselves are . . . a facet of the treatment."

Thus, the record indicates that Dr. Howarth felt that Dr. Iwasa's course of treatment continued throughout the series of appointments. The question, however, is not one of continuing treatment, because I.C. § 5–219(4), as amended, expressly states that any continuing professional relationship between the injured party and the alleged wrongdoer shall not extend the limitation period.

Dr. Howarth stated that Dr. Iwasa's failure to diagnose glaucoma in July of 1974 was an oversight. However, the record contains no reference by Dr. Howarth, or any other evidence, that Dr. Iwasa had a medical duty to reexamine, or retest plaintiff's eyes on December 22, 1975, or January 21, 1976, the respective dates that the glasses were ordered and fitted, or that Dr. Iwasa's failure to do so was in violation of the applicable standard of health care of the community. *See* I.C. § 6–1012. Viewing all facts and inferences in favor of the plaintiff, and based upon the express declaration of I.C. § 5–219(4) that any continuing professional relationship between the injured party and the alleged wrongdoer

shall not extend the limitations period, we conclude that there is no showing in the record that Dr. Iwasa was responsible for any occurrence, act or omission, *i.e.,* the failure to diagnose glaucoma, on a date within the two year limitation period set out in I.C. § 5–219(4).

Plaintiff further alleges that defendant is estopped to assert the statute of limitations as a defense. Plaintiff argues that he relied to his prejudice on Dr. Iwasa's representations that the bifocals should resolve his problems.

This Court very recently recognized that, in a proper case, a defendant may be estopped from relying on a statute of limitations as a bar to an action against him. *Twin Falls Clinic & Hospital Bldg. v. Hamill,* 103 Idaho 19, 644 P.2d 341 (1982). Estoppel may prevent a defendant from asserting the statutory bar when his representations or conduct dissuade a plaintiff from prosecuting his cause of action during the period of limitations. *See Twin Falls Clinic & Hospital Bldg. v. Hamill, supra; see also, Glus v. Brooklyn Eastern Dist. Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); *Stafford v. Schultz,* 42 Cal.2d 1, 270 P.2d 1 (1954); *Bowman v. McPheeters,* 77 Cal.App.2d 795, 176 P.2d 745 (1947).

The trial court found that "this is not a proper case for invoking the estoppel doctrine." We agree. *See McCoy v. Wesley Hospital & Nurse Training School,* 188 Kan. 325, 362 P.2d 841 (1961); *Central Heat, Inc. v. Daily Olympian, Inc.,* 74 Wash.2d 126, 443 P.2d 544 (1968). A search of the record reveals no evidence that Dr. Iwasa made any statements or took any action in an effort to induce plaintiff to delay in bringing suit. Nor, viewing the facts and inferences most favorably toward the plaintiff, is there any evidence that the plaintiff relied on statements made by Dr. Iwasa in waiting to file his action. Apparently not satisfied that the bifocals helped his condition, plaintiff went to see Dr. Howarth on January 23, 1976, just two days after his last appointment with Dr. Iwasa.

On that date plaintiff was informed that he suffered from glaucoma. Yet, he delayed until December 21, 1977, nearly 23 months after discovering his glaucoma, before filing this action. This delay cannot be attributed to the defendant. Because the record does not disclose any evidence giving rise to a material issue concerning whether Dr. Iwasa is estopped from asserting the statute of limitations, we agree with the trial court's conclusion that this is not an appropriate case for estoppel.

■ Plaintiff also alleges that I.C. § 5–219(4) is constitutionally infirm and attacks the statute as violative of both the due process and equal protection clauses of the United States Constitution. We find no such infirmities. *Cf. Twin Falls Clinic Hospital Bldg. v. Hamill*, 103 Idaho 19, 644 P.2d 341 (1982) (finding no violations of due process or equal protection in I.C. § 5–241, the statute of limitations applicable to actions arising out of design or construction of improvements to real property).

We affirm the district court's summary judgment entered in favor of the defendant on the basis that plaintiff's claim was barred by the statute of limitations. Costs to respondent.

McFADDEN, J. (Ret.), and McQUADE, J. Pro Tem., concur.

SHEPARD, Justice, dissenting, in which opinion BISTLINE, Justice, concurs.

As set forth in the majority opinion, it is axiomatic that at the juncture of a motion for summary judgment all facts, together with all reasonable inferences arising therefrom, must be viewed in the light most favorable to the party opposing summary judgment. My view of the evidence and the legitimate inferences arising therefrom lead me to a different conclusion than that of the majority. I also differ from the majority's interpretation of the applicable statute of limitations, I.C. § 5–219(4).

The majority focuses very narrowly upon Iwasa's failure to diagnose glaucoma on the dates of 7–24–74 or 11–19–75. It evidently considers the appointments of 12–22–75 and 1–21–76 as totally irrelevant. My view of the facts construed most favorably to Holmes indicates the following. Holmes consulted Iwasa with a problem evidenced by headaches, vision blurring, and sensitivity to bright lights. It was ultimately determined that Holmes' problems were the result of glaucoma. Iwasa proceeded to treat the problem, which he negligently ascribed to the need for bifocals. Iwasa's treatment of Holmes continued through 1–21–76. Holmes testified of the January, 1976 appointment, "I asked him [Iwasa] if they would clear them—up the blurriness. And he said yes, they would." Iwasa's testimony regarding that appointment appears to support the testimony of Holmes. The ophthalmologist, Dr. Howarth, stated his opinion that: "Treatment of a patient commences with the first examination and continues on as long as *the problem* of the patient is not corrected by the first procedure . . . eyeglasses themselves are . . . facet of the treatment."

Hence, it is my belief that when the facts and inferences are viewed most favorably to Holmes, Iwasa continued to treat Holmes through the January, 1976 appointment and, in failing to diagnose the glaucoma and instead attributing Holmes' problems to the need for bifocal eyeglasses, was negligent through the January, 1976 appointment.

Support for that view of the facts is found in a line of cases from the state of Washington, commencing with *Samuelson v. Freeman*, 75 Wash.2d 894, 454 P.2d 406 (1969), wherein it is stated:

"[I]f malpractice is claimed during a continuous and substantially uninterrupted course of treatment for a particular illness or condition, the statute does not begin to run until the treatment for that *particular illness or condition* has been terminated." *Id.*, 454 P.2d at 410 (emphasis added).

I believe that the majority's interpretation of I.C. § 5–219(4) is erroneous. That statute provides that an action sounding in professional malpractice, unless it falls within certain exceptions not pertinent

here, accrues "as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom *or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer.*" (Emphasis supplied.)

It is my view that the majority's interpretation of the statute would lead to the following result. Assume a patient is having trouble with his elbow and consults an orthopedic surgeon. The surgeon takes x-rays, which, if examined properly, would indicate the presence of cancer in the elbow joint which, if immediately treated, could be totally cured. However, the doctor fails to so diagnose and prescribes a course of treatment for the patient involving hot packs, exercise regime, aspirin, cortisone shots, immobilization of the arm, etc. Over the next two years the patient gains no relief and continues to consult the doctor on a monthly basis who continues the same treatment. One month later the patient sees another doctor who diagnoses cancer which has now spread to the extent that the arm must be amputated. I believe that under the rationale of the majority, the failure to diagnose would be pinpointed during the patient's first visit and he would therefore be barred from an action regardless of the obvious continuing negligence.

It would be my view that a correct interpretation of the statutory language of "continuing professional or commercial relationship" should have application only to a situation where the continuing relationship had nothing to do with the patient's problem which was originally misdiagnosed by the doctor. If, for example, a female patient consulted a general practitioner with the same elbow problems outlined above and that doctor failed to diagnose the cancer, and the patient thereafter never consulted that doctor regarding the elbow problem, but the doctor a year or so later examined the woman over a course of months relating to a pregnancy and later delivered a baby, clearly, that would constitute a continuing professional relationship, but nevertheless would have nothing to do with a continuous course of negligent treatment.

Hence, although it might appear to the majority that Holmes' chances at trial for recovery is somewhat slim, nevertheless, I deem the granting of the motion for summary judgment to have been erroneous and the matter should be remanded for trial.

BISTLINE, J., concurs.