788 P.2d 1321

**Julie HAWLEY, Plaintiff–Appellant,**

**and**

**Lanny Hawley, Plaintiff,**

**v.**

**Lawrence E. GREEN, M.D.; David Matheson, M.D.; David W. Bennett, M.D.; George R. Allen, M.D.; HCA of Idaho, Inc., dba West Valley Medical Center; and John Does I through IV, Defendants–Respondents.**

**No. 17591.**

Supreme Court of Idaho.

March 19, 1990.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for defendants-respondents Matheson, Bennett and Allen. Gerald T. Husch, argued.

Gigray, Miller & Downen, Caldwell, for defendant-respondent HCA of Idaho, Inc. Ronald J. Wilper, argued.

Evans, Keane, Koontz, Boyd, Simko & Ripley, Boise, for plaintiff-appellant. Betty H. Richardson, argued.

Howard & Owens, Coeur d'Alene, for amicus curiae Idaho Trial Lawyers Ass'n. R. Bruce Owens, argued.

Quane, Smith, Howard & Hull, Boise, for defendant-respondent Green. Kathryn A. Sticklen, argued.

BAKES, Chief Justice.

This is a medical malpractice action. Appellant (Hawley) brought suit against respondents (Doctors Green, Matheson, Bennett, Allen and H.C.A. of Idaho) for their alleged failure to diagnose a tumor. The district court granted summary judgment in favor of the defendants on the ground that Hawley's claims were barred by the statute of limitations in I.C. § 5–219(4); the district court also held that, as applied to this case, I.C. § 5–219(4) did not violate the open courts guarantee contained in art. 1, § 18, of the Idaho Constitution, or the equal protection provisions of the Idaho and United States Constitutions. Hawley appeals this order. We affirm the district court ruling with respect to the constitutional claims and reverse in part the grant of summary judgment on the basis that, as to some of the defendants, there is a triable issue of fact as to whether the statute of limitations had run.

On September 1, 1979, the appellant Julie Hawley had a chest X-ray taken at the Caldwell Memorial Hospital, preliminary to surgery for a medical condition unrelated to this action. Defendant, Dr. Bennett, a radiologist, was the doctor who reviewed the chest X-ray and made his report.

On May 21, 1981, Hawley had another chest X-ray taken at Caldwell Memorial Hospital. Defendant, Dr. Matheson, was the radiologist who reviewed this chest X-ray. Neither of the doctors discovered any existing tumors.

In November, 1983, Hawley had an eye examination performed by an ophthalmologist, Dr. Chen, who recommended that Hawley be seen by a neurologist because she was exhibiting symptoms of Horner's Syndrome, a condition often caused by tumors. Defendant Dr. Green, a neurologist, performed an initial examination on November 8, 1983. At this time, Hawley was experiencing no pain or discomfort. Hawley and Dr. Green discussed a possible droopy eyelid and small pupil which the ophthalmologist had noticed, and a possible puffiness on the left side of Hawley's face.

Defendant Green scheduled a neck X-ray for November 8, 1983, and a CT scan for November 11, 1983. The X-ray was reviewed by Dr. Matheson; the CT scan, by Dr. Allen. Dr. Green reviewed the reports of the X-ray and CT scan prepared by Drs. Matheson and Allen. Subsequently, defendant Green informed Hawley that all tests were negative, that she did not have a

droopy eyelid, and that she was otherwise normal and healthy except for the puffiness in her cheek which could have been caused by a sinus condition or allergy. Appellant Hawley knew she had had an allergy prior to this time. Hawley experienced no pain, discomfort or any other problems after the exam by Dr. Green.

In late 1983 Hawley moved to Oregon where she lived in apparent good health until approximately September, 1986, at which time she began experiencing neck and shoulder stiffness and discomfort. On September 8, 1986, she was examined, had a chest X-ray and CT scan performed, which revealed a large tumor in her lower left neck and chest area. The tumor was surgically removed on September 22, 1986. In October, 1986, Hawley was informed that the tumor was malignant. She was further informed by the Oregon doctors that the tumor was visible in her X-rays and CT scan taken by defendants in 1979 through 1983.

On September 4, 1987, Hawley filed a claim against the defendant respondents herein with the State of Idaho Board of Medicine. After hearing, a preliminary litigation screening panel issued a report and recommendation in December of 1987. Thereafter, on December 28, 1987, Hawley filed a complaint in the District Court for the Third Judicial District. The complaint alleged that the tumor was visible on the 1979–83 X-rays, and that the defendants were negligent for not diagnosing it.

For purposes of their summary judgment motions, the defendant doctors stipulated that the tumor could be considered visible on the 1979 through 1983 X-rays and CT scans. Applying I.C. § 5–219(4) in accordance with this Court's holding in *Holmes v. Iwasa*, 104 Idaho 179, 657 P.2d 476 (1983), the district court held that, since Hawley's tumor was visible on the X-rays from 1979 through 1983, there was objectively ascertainable damage at that time, and the statute began to run no later than 1983; thus, Hawley's complaint, which was filed four years later, was barred by the two-year statute of limitations in I.C. § 5–219(4). The district court also ruled that I.C.

§ 5–219(4) did not violate either Hawley's equal protection rights or the open courts provision of art. 1, § 18, of the Idaho Constitution.

From the foregoing facts, the following issues are before us on appeal: (1) does I.C. § 5–219(4) violate art. 1, § 18, of the Idaho Constitution; (2) does I.C. § 5–219(4) violate Hawley's equal protection rights under the federal and state Constitutions; and (3) when did Hawley's damages become "objectively ascertainable" so as to commence the running of the statute of limitations?

## I

Does I.C. § 5–219(4) violate art. 1, § 18, of the Idaho Constitution?

■ We first consider appellant's claim that I.C. § 5–219(4) violates art. 1, § 18, of the Idaho Constitution. That section provides:

**Justice to be freely and speedily administered.**—Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be administered without sale, denial, delay or prejudice.

Hawley argues that art. 1, § 18, guarantees reasonable access to the courts to pursue remedies for legally cognizable injuries and that application of I.C. § 5–219(4) bars her from access to the courts even before discovering or having had a reasonable opportunity to discover the harm inflicted upon her by defendants.

Examination of art. 1, § 18, begins with the seminal case of *Moon v. Bullock*, 65 Idaho 594, 151 P.2d 765 (1944), *overruled on other grounds, Doggett v. Boiler Engineering & Supply Co., Inc.*, 93 Idaho 888, 477 P.2d 511 (1970). In *Moon* this Court refused to interpret art. 1, § 18, as guaranteeing a remedy to every person for every injury. The Court quoted with approval the opinion of the trial court which stated:

I cannot so interpret Sec. 18 of Art. I. It grants no new rights, modifies no existing law, and prescribes no new duties. It merely admonishes the courts to administer "right and justice without sale,

delay or prejudice." It does not, and was not intended to enlarge or to extend the rights or the remedies of the citizens. Its purpose and effect are to secure to the citizen the rights and remedies that the law as it then existed, or as it might be changed from time to time by the legislature, afforded.

*Moon v. Bullock*, 65 Idaho at 603, 151 P.2d at 769. We thus approved in *Moon* the holding that art. 1, § 18, merely admonishes the Idaho courts to dispense justice and to secure citizens the rights and remedies afforded by the legislature or by the common law, and that art. 1, § 18, did not create any substantive rights.

In a number of cases subsequent to *Moon,* we have consistently adhered to the principles there laid down. *See, e.g., Cummings v. J.R. Simplot Co.,* 95 Idaho 465, 511 P.2d 282 (1973) (strict application of statute of limitations in I.C. § 72–407 not a violation of art. 1, § 18); *Twin Falls Clinic & Hospital Building Corp. v. Hamill,* 103 Idaho 19, 644 P.2d 341 (1982) (art. 1, § 18, does not prohibit the legislature from abolishing a common law right of action without providing a substitute); *Jones v. State Bd. of Medicine,* 97 Idaho 859, 864, 555 P.2d 399, 404 (1976), *cert. denied* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977) ("Nothing in art. 1, § 18, either explicitly or implicitly prohibits legislative modification of common law actions."). Accordingly, the trial court did not err in holding that I.C. § 5–219(4) does not violate art. 1, § 18, of the Idaho Constitution.

## II

■ The next issue raised is whether I.C. § 5–219(4) violates Hawley's equal protection rights under the state and federal Constitutions. However, we have previously resolved this issue in a similar malpractice case, *Holmes v. Iwasa,* 104 Idaho 179, 657 P.2d 476 (1983), involving a claim of failure to discover or diagnose glaucoma, which is similar to the claim here of failure to discover or diagnose the tumor. In *Holmes* we stated:

> Plaintiff also alleges that I.C. § 5–219(4) is constitutionally infirm and attacks the statute as violative of both the due process and equal protection clauses of the United States Constitution. We find no such infirmities.

104 Idaho at 184, 657 P.2d at 481.

Hawley nevertheless argues that under the rational basis test, which is the applicable standard for reviewing this legislation, it still is unconstitutional, reasoning that there exists no rational basis to distinguish between plaintiffs such as herself and plaintiffs with a foreign object or fraudulent concealment claim. In assessing this challenge, we note first that the purpose of a statute of limitations in general is to prevent fraudulent and stale claims from arising after a great lapse of time while preserving for a reasonable period the right to pursue a claim. *Owens v. White,* 380 F.2d 310 (9th Cir.1967). With respect to the fraudulent concealment exception, since part of the legislature's goal in enacting I.C. § 5–219(4) was the preclusion of fraudulent claims, the creation of an exception for defendants who have fraudulently concealed their negligence would certainly comport with the furtherance of that goal. Moreover, in *Fitz v. Dolyak,* 712 F.2d 330 (8th Cir.1983), the court addressed an issue and argument identical to the one presented by Hawley with respect to the foreign object exception and found that the distinction between foreign object plaintiffs and other malpractice claimants can rationally be found to further the purpose behind the statute of limitations. The court held:

> [W]e find that a distinction between foreign object cases and other malpractice cases could rationally be found to further this legislative purpose. In contrast to the propriety of a diagnosis or adequacy of treatment, the presence or absence of foreign objects inadvertently left in the body may be easily verified after the passage of time. That the distinction drawn by the legislature is not sufficiently broad or that a classification operates harshly in a particular case is not grounds for a finding that it is unconstitutional.

712 F.2d at 333. We find this reasoning persuasive. We reaffirm our decision in

*Holmes v. Iwasa,* 104 Idaho 179, 657 P.2d 476 (1983). Accordingly, the opinion of the district court is affirmed with respect to the constitutionality of I.C. § 5–219(4).

### III

In her final issue on appeal Hawley argues that under I.C. § 5–219(4) her damages did not become objectively ascertainable until just a few days prior to September 8, 1986, the point in time when she first experienced pain from the tumor and incurred medical expenses and economic loss occasioned by the removal of the tumor. As a result, Hawley claims that her cause of action did not accrue until that time, and her complaint is therefore not barred by the statute of limitations. Alternatively, Hawley argues that damages were not objectively ascertainable until a "malignant" tumor manifested itself, reasoning that the mere presence of a non-malignant tumor does not necessarily indicate she suffered damage. She argues that since there is no evidence on the record as to when her tumor became malignant, there remains a triable issue of fact as to when she suffered some damage. The district court rejected this argument, stating: "In 1983, if defendants failed to diagnose and treat plaintiff Julie Hawley for the tumor, she was damaged. She possessed a cause of action against the defendants at that time."

■ I.C. § 5–219(4) reads in pertinent part:

**5–219. Actions against officers for penalties, on bonds, and for professional malpractice or for personal injuries.** —...

....

4. ...; but in all other actions, whether arising from professional malpractice or otherwise, the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer....

Despite the language in 5–219(4) that a "cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of," this Court has held that a cause of action does not accrue at the time of the act complained of unless some damage has occurred. *Griggs v. Nash,* 116 Idaho 228, 775 P.2d 120 (1989); *Werner v. American–Edwards Laboratories,* 113 Idaho 434, 745 P.2d 1055 (1987); *Streib v. Veigel,* 109 Idaho 174, 706 P.2d 63 (1985); *Theriault v. A.H. Robins Co.,* 108 Idaho 303, 698 P.2d 365 (1985); *Blake v. Cruz,* 108 Idaho 253, 698 P.2d 315 (1984); *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984). In many medical malpractice cases, the damage occurs contemporaneously with the negligent act. *Davis v. Moran,* 112 Idaho 703, 735 P.2d 1014 (1987). In some instances, however, the damage may not occur until some time after the negligent act. *Streib v. Veigel,* 109 Idaho 174, 706 P.2d 63 (1985); *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984). As we recognized in *Davis v. Moran,* "However, where the functional defect (and its symptomology) does not occur at all until a later time, the very nature of a tort action requires us to read this language in I.C. § 5–219(4) flexibly to avoid absurd results." 112 Idaho at 708, 735 P.2d at 1019. In such cases, we said, the statute does not begin to run until the occurrence of damage. This is so because, as our prior cases explain, a cause of action cannot successfully be brought until some damage exists. Thus, we said in *Blake v. Cruz,* 108 Idaho 253, 260, 698 P.2d 315, 322 (1984): "[T]he statute of limitations does not begin to run against a negligence action until some damage has occurred." Hence our rule that the statute begins to run when damages are objectively ascertainable. The "objectively ascertainable" standard was defined in *Davis v. Moran* as follows: "By this, we mean that objective medical proof would support the existence of an actual injury." 112 Idaho at 709, 735 P.2d at 1020.

Both parties agree to the validity and applicability of the foregoing principles to this case. However, they disagree as to whether or not the summary judgment

record in this case supports the district court's conclusion that damage to Hawley was objectively ascertainable when the X-rays taken between 1979 and 1983 disclosed the tumor, and the doctors failed to diagnose it. Hawley alleges that her damage or injury was the pain and suffering she first experienced from the tumor and the medical and economic loss she sustained by virtue of its surgical removal. In conjunction with this argument, Hawley asserts that the damages must be objectively ascertainable *to the plaintiff* to commence the running of the statute. However, that would reinstate a discovery rule on a statute whose enactment was predicated in part upon rejection of such a discovery rule. This we have consistently rejected. *Davis v. Moran*, 112 Idaho 703, 735 P.2d 1014 (1987); *Streib v. Veigel*, 109 Idaho 174, 706 P.2d 63 (1985); *Theriault v. A.H. Robins Co., Inc.*, 108 Idaho 303, 698 P.2d 365 (1985).

Hawley maintains in the alternative that there was no damage until a malignant tumor manifested itself, reasoning that if her tumor were benign when defendants failed to diagnose it, it would have caused no damage. Since there was no evidence below as to whether the tumor was in fact malignant when the defendants failed to diagnose it, she avers, there yet remains a triable issue of fact as to whether damage occurred at that time. Though not without merit, this argument fails to consider the possibility that by failing to diagnose even a benign tumor Hawley may have been damaged if that condition was progressive or health threatening.

Respondents Green and HCA both argue that Hawley was damaged by failure of the respondents to diagnose the "tumor itself,"

and since the tumor was visible on the X-rays from 1979 through 1983, her "damage" was objectively ascertainable at that time. A review of our prior decisions reveals that in most cases the damage or injury for which the plaintiff complains was caused by the defendant's negligent act or omission. However, in this case the defendants did not cause the tumor to exist in Hawley's body, and obviously Hawley could not have sued the defendants for the existence of the tumor if they had in fact discovered and disclosed it. The wrong which the defendants are accused of is their failure to diagnose the tumor which they reasonably should have observed on the X-rays and the CT scan.[1]

Unpersuaded by Hawley's analysis, the district court stated:

> The plaintiff Julie Hawley's cause of action for negligence does not accrue until there is objective medical proof which would support the existence of an actual injury. Such proof is satisfied by the X-rays, 1979 through November 1983. *Plaintiff Julie Hawley was damaged by the defendants' alleged failure to detect a progressive condition, i.e., a malignant tumor, no later than November 14, 1983.* (Emphasis supplied.)

In reaching this conclusion, the district court relied primarily upon our prior case of *Holmes v. Iwasa*, 104 Idaho 179, 657 P.2d 476 (1983). In *Holmes*, the defendant (an optometrist) examined plaintiff's eyes on two separate occasions but failed to discover that plaintiff had glaucoma. More than two years elapsed since his last examination, and a second doctor later detected plaintiff's glaucoma and determined that the plaintiff had been afflicted with that

---

1. The record suggests that respondent Dr. Green did not personally examine the X-rays or the results of the CT scan, but merely reviewed the written reports of the results of the X-rays and CT scan submitted by the other doctors who were radiologists and expert in those matters. Thus the issue with regard to Dr. Green is very likely different, and may relate to the question of whether it was a violation of the community standard of health care for Dr. Green to rely upon the written reports of the radiology experts who took and read the X-rays and CT scan. However, the affidavit of Dr. Green does

not address the issue. It consists merely of two statements, only one of which is relevant to this issue. It states, "My last treatment and care of, or involvement with, Julie L. Hawley, was November 14, 1983." The affidavit does not address the community standard of care owed by Dr. Green, nor does it address the issue of whether, if the plaintiff's allegation of the undiagnosed tumor on November 14, 1983, is true, did Dr. Green breach the community standard of care by relying on the written reports of the other doctors regarding what the X-rays and CT scan disclosed.

**504**

condition for roughly the last eight years. The factual situation in *Holmes* appears, at first glance, to bear similarities to the present case. However, a careful reading of the two cases reveals a significant dissimilarity. In *Holmes*, the uncontroverted evidence in the record demonstrated that the damage suffered by the plaintiff (the glaucoma) occurred contemporaneously with the negligent act (the failure to diagnose the glaucoma). Dr. Howarth, the ophthamologist who ultimately diagnosed the plaintiff's glaucoma, explained in his deposition that marked glaucoma means that the patient had sustained considerable damage to his optic nerve and that his eyes have been severely damaged by the glaucoma. Dr. Howarth went on to explain that untreated glaucoma is a progressive disease and that "he [the plaintiff] sustains a little damage in the initial phase of the process. It's very slow. It's a sneaky, smoldering thing, but nevertheless damage is occurring and then the pressure goes up." Thus, the summary judgment record in *Holmes* established the fact that at, and immediately after, the time of the alleged negligent failure to diagnose the glaucoma, the condition was progressing and worsening and, as explained by Dr. Howarth, "damage is occurring."

Unlike *Holmes*, the record in the present case does not contain any evidence to show that any damage was occurring at the time the defendants failed to diagnose Hawley's tumor. The only facts that are established and uncontroverted in this record are that the tumor was evident on the X-rays taken between 1979 and 1983. There is no evidence in the record one way or another concerning whether during 1979–83 the tumor was progressive, malignant, harmful or in any manner dangerous at this point in time. While we might speculate, as the district court apparently did, that the tumor was progressive, malignant, or otherwise dangerous, the record does not establish that as an uncontradicted factual matter.

The statute of limitations is an affirmative defense which must be pleaded and proved by the defendant. I.R.C.P. 8(c);

*Resource Engineering, Inc. v. Siler,* 94 Idaho 935, 500 P.2d 836 (1972). The defendant has the burden of proving every element necessary to establish the affirmative defense. *Johnston v. Keefer,* 48 Idaho 42, 280 P. 324 (1929); *Pauley v. Salmon River Lumber Co.,* 74 Idaho 483, 264 P.2d 466 (1953). In this case, the defendants thus had the burden of going forward, with uncontradicted evidence, showing that the tumor which appeared on the 1979–83 X-rays was progressive or otherwise dangerous to the health of the plaintiff in order to establish that the plaintiff had incurred "some damage" at that time. *Griggs v. Nash,* 116 Idaho 228, 775 P.2d 120 (1989); *Holmes v. Iwasa,* 104 Idaho 179, 657 P.2d 476 (1983). We will not speculate as to the existence of damage, and the summary judgment record in this case is inadequate to prove it. Accordingly, we affirm on the issues considered in Part I and Part II, but reverse the summary judgment as to the statute of limitations issue in Part III and remand for further proceedings in accordance with this opinion.

BISTLINE, BOYLE and McDEVITT, JJ., and WINMILL, J. Pro Tem., concur.