477 P.2d 511

Charlottie Verlene DOGGETT, surviving widow and Administratrix of the Estate of Cloyd Doggett, deceased, Plaintiff-Appellant,

v.

BOILER ENGINEERING & SUPPLY CO., Inc., a Corporation, Bradley Boiler Co., a Corporation, Electronics Corporation of America, Combustion Control Division, a Corporation, Controls and Instruments Division of International Telephone and Telegraph Corporation, a Corporation, Optimum Controls Corp., a Corporation, Edward Liversidge and James F. Williams, Defendants-Respondents.

No. 10556.

Supreme Court of Idaho.

Dec. 8, 1970.

Church, Church & Snow, Burley, for appellant.

Baum & Peterson, Pocatello, for respondents Boiler Engineering & Supply Co., Inc., and Edward Liversidge.

Parry, Robertson, Daly & Larson, Twin Falls, for respondent Bradley Boiler Co.

Merrill & Merrill, Pocatello, for respondent Electronics Corp. of America, Combustion Control Division.

Eberle & Berlin, Boise, for respondent Controls and Instruments Division of International Telephone and Telegraph Corp.

Schwartz & Doerr, Twin Falls, for respondent Optimum Controls Corp.

Benoit, Benoit & Alexander, Twin Falls, for respondent James F. Williams.

SHEPARD, Justice.

On October 13, 1966, Cloyd Doggett was injured in the explosion of an industrial boiler which was being installed in a plant where Doggett was an employee. It is alleged that Doggett suffered severe personal injuries and that by reason thereof, he was permanently disabled and unable to obtain gainful employment. It is further alleged that he incurred substantial medical and hospital expenses, together with a loss of wages to the time of the filing of the complaint and that he would suffer additional damages for future medical expenses, suffer loss of wages, and would have pain and suffering thereafter.

Cloyd Doggett instituted suit against the manufacturer and the installer of the boiler and also against various manufacturers of component parts of the boiler. The suit sought recovery for damages for personal injuries to the plaintiff Cloyd Doggett, as aforesaid, and was based upon the theories of negligence and strict liability. The case was before this Court for a determination of jurisdiction over certain of the component part manufacturers. In Doggett v. Electronics Corp. of America, et al., 93 Idaho 26, 454 P.2d 63, we found in favor of the plaintiff Cloyd Doggett on the question of jurisdiction and the cause was remanded for trial. Subsequent to remand, but prior to the time of the trial, and on August 12, 1969, Cloyd Doggett died.

Charlottie Verlene Doggett, widow of Cloyd Doggett and Administratrix of his estate, then moved to be substituted as party plaintiff. That motion was resisted by defendants and some of the defendants then filed a motion for summary judgment on the ground that since the plaintiff had died, the action had abated. The trial court denied the motion of plaintiff's widow to be substituted as party plaintiff, granted the defense motion for summary judgment, and upon the Court's own motion, dismissed the complaint. From those orders of the Court, Charlottie Verlene Doggett appeals.

It is contended by the defendants-respondents that the common law rule expressed in the maxim *actio personalis moritur cum persona* (a personal right of action dies with the person) is a portion of the law in this state and that actions for personal injuries abate with the death of the plaintiff. Respondents contend that since the action has abated, the trial court was correct in its denial of the motion to substitute Doggett's widow as plaintiff in this cause. Appellant, on the other hand, contends that even if the common law rule was in existence in this state, such has been abrogated by the legislative enactment of community property laws in the State of Idaho.

The origin and effect of the rule and maxim *actio personalis moritur cum persona* in the early common law is obscure. Students of the common law seem to agree that the maxim and rule, if it ever had any significant validity, was greatly restricted to trespasses and torts that constituted a felony. It is apparent that the wrongs which later came to be represented by writs of trespass had a criminal and later a quasi-criminal origin. See Holdsworth, A History of the English Law, Vol. 3.

Professor Percy Winfield of Cambridge University, 29 Columbia Law Review 239, indicates that neither the Roman law nor the Canon law was responsible for the maxim and "acquits Bracton of the parentage of this queer offspring." He further suggests that regardless of statements to the contrary, Coke did not invent it. Winfield, after examining cases in the 16th and 17th centuries, states: " * * * (i)t may fairly be said of these that with scarcely a single exception the maxim was always uttered in circumstances, or with qualifications, that cut down its application to the law of torts and usually comes from counsel who are snatching at another language in order to screen a hopeless argument of their own."

By the time of Blackstone, we find him saying: " * * * (i)n actions merely personal, arising *ex delicto,* for wrongs actually done or committed by the defendant, as trespass, battery, and slander, the rule is

that *actio personalis moritur cum persona;* and it never shall be revived either by or against the executors or other representatives. For neither the executors of the plaintiff have received nor those of the defendant have committed, in their own personal capacity, any manner of wrong or injury." 3 Blackstone Commentaries 302.

It appears clear that the rule as to non-survival of causes of action for tort came into being because of the criminal character of acts in the early common law and was pointed toward serious intentional wrongs. Publix Cab Company v. Colorado National Bank of Denver, 139 Colo. 205, 338 P.2d 702 (1959). The Court in *Publix* points out that the rule of non-survival is a vestige of the ancient concept of violent torts and owes its existence to historical accident and blind adherence to precedence.

In contrast to the violent tort concept as being a criminal or quasi-criminal matter, it should be noted that the type of tort based on the *negligence* of the wrongdoer was not recognized until the 19th century. We note at this point that it seems illogical that a rule laid down in the earliest common law to prevent the continuation of actions in the case of violent and deliberate acts should be applied to acts of negligence for which no action existed until the mid-19th century.

Across the United States decisions of courts and enactments of legislatures have changed the common rule as to abatement of actions to the extent that little, if any, of it today remains. 29 Michigan Law Review 969. Professor Alvin E. Evans, then Dean of the University of Kentucky Law School, in 29 Michigan Law Review 969, points out that it is almost "inconceivable" that we should continue to deny survival of actions where the estate of the injured person has been lessened and states there should be no difference in the principles involved, regardless of whether intentional or negligent injuries are involved.

Respondent argues that, regardless of the lack of unanimity in other jurisdictions regarding the theory of abatement of a cause of action upon the death of a plaintiff at common law, nevertheless the decision of the Court in Moon v. Bullock, 65 Idaho 594, 151 P.2d 765 (1944), is controlling in the case at bar. Respondent correctly points out that *Bullock* stated that an action ex delicto did not survive the death of either party. The Court however in *Bullock* had for consideration an action involving the death of a *tort feasor*. It held that the action did not survive the tort feasor's death. The legislature promptly thereafter struck down the ruling of the Court in *Bullock* by the enactment of I.C. 5–327 permitting the survival of an action against a deceased tort feasor. The legislature had before it a specific holding of the Court that the death of a tort feasor abated an action ex delicto and it acted to negate that holding of the Court. We cannot agree with the respondent that such legislative action shows an intent to continue abatement of an action upon the death of the recipient of a wrong. The ascertainment of the legislative intent from its actions is many times difficult and to attempt to ascertain legislative intent from inaction is, we submit, next door to impossible. In any event, to the extent that *Bullock* suggests that an action ex delicto abates upon the death of the plaintiff in a case such as presented herein, it is overruled.

Respondent cites Norton v. City of Pomona, Cal.App., 43 P.2d 586 (1935); Munchiando v. Bach, 203 Cal. 457, 264 P. 762 (1928), and Bortle v. Osborne, 155 Wash. 585, 285 P. 425 (1930), all as authority for the rule of non-survivability of a cause of action following the death of a plaintiff. We do not find the "careful review of common law history" in *Norton* as suggested by the respondent. The Court in *Norton* did indeed state that a cause of action founded on tort does not survive the death of either the person to or by whom wrong is done. The Court, however, later in its opinion stated:

"In view of the facts as revealed by the record herein, measured by the rules above stated and which were applied to a

similar set of facts in the cases cited, we conclude that the trial court was fully justified in making and carrying out its nunc pro tunc order. [After trial had been held and a judgment rendered, plaintiff had died prior to the formal entry of the judgment and plaintiff's representatives had sought formal entry of the judgment nunc pro tunc.]

*"This conclusion renders it unnecessary to consider the question of the effect of abatement as to one spouse by death upon the rights of the other in respect to community property represented by the cause of action."* 43 P.2d 586, 590 (Emphasis added)

In *Munchiando,* the rule contended for by respondent herein is merely recited in a short two-paragraph opinion. We do not find such an opinion of any persuasive nature.

*Bortle* was a wrongful death action following the death of the *tort feasor.* The Washington Court held that the action did not survive as against the spouse of the deceased tort feasor and stated:

"The liability, if any, for the tort of which appellant complains would be a community obligation which could not be enforced against the separate property of the wife. The separate property of the wife would not be liable for a judgment against the community."

We doubt the applicability of the "holding" in *Bortle* to the case at bar.

The appellant further argues that in any event and regardless of the existence or non-existence of the common law rules sought herein by respondent, there has nevertheless been a statutory abrogation of the contended-for common law rule by the enactment of our community property statutes. The rules of the common law are in effect in Idaho only to the extent that they are not repugnant or inconsistent with legislative enactments. I.C. 73–102, I.C. 73–116, State v. Iverson, 79 Idaho 25, 310 P.2d 803.

I.C. 32–906 provides in pertinent part:
"All other property acquired after marriage by either husband or wife, including the rents and profits of the separate property of the husband and wife, is community property, unless by the instrument by which any such property is acquired by the wife it is provided that the rents and profits thereof be applied to her sole and separate use; in which case the management and disposal of such rents and profits belongs to the wife, and they are not liable for the debts of the husband."

In Idaho there exists but one cause of action for personal injuries to a married resident of this state arising out of the tortious conduct of a third party. Muir v. City of Pocatello (1922), 36 Idaho 532, 212 P. 345; Swager v. Peterson (1930), 49 Idaho 785, 291 P. 1049. That single cause of action is a property right and, together with any proceeds recovered therefrom, is the community property of both spouses. Muir v. City of Pocatello, *supra;* Swager v. Peterson, *supra.* The wife's interest in community property is a present vested estate, not a mere expectancy, and vests at the time of its acquisition and is equal in degree, quantity, nature and extent with that of her husband's except only as to its management and control. Anderson v. Idaho Mutual Benefit Assoc., 77 Idaho 373, 292 P. 2d 760; Hansen v. Blevins, 84 Idaho 49, 367 P.2d 758.

This action was commenced by Cloyd Doggett and the cause of action was the community property of both spouses. Charlottie Verlene Doggett's interest in the cause of action was a property right equal in nature and extent to that of her husband. The action, therefore, was brought by Cloyd Doggett as the manager of the community. Any proceeds that might have been recovered, if he had not died, would have been community assets. Here the property was acquired and vested prior to the dissolution of the community by the death of the husband.

In the early days of the common law of England a wife was little more than a chat-

tel. As stated by Professor Brockelbank in his The Community Property Law of Idaho:

"For the common mass the common law was the incident of every day living. The wife was incompetent to contract and she lost nearly everything by marriage. As Charles A. and Mary Beard have said: 'Marriage under the common law system is equivalent to civil death for the wife.'"

Perhaps one of the longest steps forward in relieving wives of many of the cruel injustices of the common law was the enactment of community property statutes. Those statutory schemes generally place the ownership of property acquired during coverture equally between husband and wife. Professor Brockelbank states:

"The traditional pattern of 'reception' of the common law in America, as the main body of the law, modified a bit here and there as the needs of the moment make desirable, has produced results in many fields that are not unsatisfactory. But this is not true in the field of the property relations of the spouses. There are two reasons. The common law system is so illogical and unjust as to be beyond the possibility of correction by mere tinkering. And the public attitude toward women and their proper place in the social fabric has undergone a complete change."

Professor Brockelbank points out that a wife theoretically and in the most desirable scheme of things is equally responsible for the acquisition of the family assets and she suffers equal financial loss when the family is deprived of its assets or its ability to acquire assets because of the wrongful acts of a third person.

■ We hold therefore that, to the extent that there has been alleged, and the appellant can prove, damage to the community by way of depletion of community assets, reduction of the ability of the community to earn income, costs and expenses chargeable against community property, and the general damages for pain and suffering, such cause of action survives the death of the deceased spouse and no other person and the damages are restricted to those which accrued prior to the death of Doggett.

As is well stated in Haney v. Lexington, 386 S.W.2d 738 (Ky.1964):

"The reason the courts have denied their logical impulses and have continued to enforce an unfair rule of law is because they have been nurtured and sustained by another ancient and firmly fixed doctrine, that is, stare decisis et non quieta movere—to adhere to precedents and not to unsettle things which are established. But when established things are no longer secure in a fast changing world, the court should re-examine the precedents and determine if they provide a proper standing under present conditions."

We have examined the precedents and the reasons for the rule of non-survivability of causes of action following the death of a plaintiff. We find the precedents unclear and unsatisfactory and the purported reasons for the rule virtually non-existent. We suggest therefore that a continuation of such a rule serves no purpose.

The orders of the District Court denying the substitution or addition of the appellant as party plaintiff herein, the granting of the motion for summary judgment for defendants, and the order dismissing the action are reversed and the cause remanded for further proceedings consistent with the views expressed herein. Costs to appellant.

McFADDEN, C. J., and McQUADE, DONALDSON and SPEAR, JJ., concur.