89 F.3d 844
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John DOE, Plaintiff-Appellant,
v.
CUTTER BIOLOGICAL, INC., a DIVISION OF MILES LABORATORIES,
INC.; Miles Laboratories; and Armour
Pharmaceutical Corporation, Defendants-Appellees.
 No. 95-35238.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 8, 1996.
Decided June 24, 1996.
 
 1
 Before: PREGERSON and TASHIMA, Circuit Judges, and JONES, District Judge*.
 
 
 2
 MEMORANDUM**
 
 
 3
 John Doe brought this products liability action against appellees Cutter and Armour (Providers) which manufacture a coagulation product known as "Factor VIII."[1] On the Providers' Motions for Summary Judgment, the Idaho Federal District Court dismissed Doe's lawsuit because he could not present a genuine issue of material fact regarding which Providers' product contained the dangerous defect that caused Doe's injury. Doe appealed, but he died during the pendency of this appeal. Because tort causes of action abate upon the pre-judgment death of the victim under Idaho common law, this appeal must be dismissed.
 
 BACKGROUND
 
 4
 Appellant John Doe was a hemophiliac who became infected with Human Immunodeficiency Virus (HIV), the virus that causes Acquired Immune Deficiency Syndrome (AIDS). Doe allegedly contracted the virus from infusions of Factor VIII which was produced, marketed, and sold by the Providers. Consequently, on October 30, 1992, Doe sued the Providers in Idaho Federal District Court.
 
 
 5
 The Providers moved for summary judgment against Doe's lawsuit for failure to present a disputed issue of material fact regarding which Factor VIII provider caused Doe's injury. The Idaho District Court dismissed Doe's lawsuit on the Providers' Motions for Summary Judgment.
 
 
 6
 Thereafter, pursuant to Fed.R.Civ.P. 59, Doe filed Motions to (1) Alter Judgment to Dismiss Without Prejudice and With Leave to File Second Amended Complaint, and (2) Alter or Amend Memorandum Decision and Judgment. The court summarily denied these post-judgment motions on January 26, 1995. This appeal followed.
 
 
 7
 Unfortunately, during the pendency of this appeal, Doe died as a result of AIDS-related complications. After his death, Doe's Personal Representative moved to substitute for Doe so that his action could continue. That motion was granted on November 2, 1995. However, on September 22, 1995, the Providers filed a Joint Motion to Dismiss the Appeal as Moot, which is currently pending in addition to Doe's appeal from the Idaho District Court.
 
 
 8
 Therefore, the following issues are before this Court: (1) whether Doe's action and appeal survive his death, (2) if his action survives, whether Idaho recognizes any alternative causation theories, (3) whether Idaho's Blood Shield Statute precludes causes of action based upon strict liability and breach of implied warranty against a Factor VIII provider, and (4) whether the district court abused its discretion in denying Doe's post-judgment motions.
 
 DISCUSSION
 
 9
 Before reviewing the lower court's decision, we must first determine whether Doe's death rendered his appeal moot. Because federal jurisdiction in this case is based upon diversity of citizenship under 28 U.S.C. § 1332, we must apply the law of Idaho, as if we are sitting as the Supreme Court of Idaho. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).
 
 
 10
 In Idaho, "[t]he common law of England, so far as it is not repugnant to, or inconsistent with, the constitution or laws of the United States, in all cases not provided for in these compiled laws, is the rule of decision in all courts of this state." Idaho Code § 73-116 (1995). At common law, the death of either the victim of a tort or the tortfeasor, extinguished the victim's right of action, and could not be continued by a representative of the decedent. Vulk v. Haley, 112 Idaho 855, 857, 736 P.2d 1309, 1311 (1987); see Evans v. Twin Falls County, 118 Idaho 210, 215-16, 796 P.2d 87, 92-93 (1990) (right of action under tort died with the pre-judgment death of the victim), cert. denied, 498 U.S. 1086 (1991) (citations omitted). Furthermore, at common law where a person's death was caused by the wrongful act of another, the relatives and dependents of the victim had no cause of action of their own." Evans, 118 Idaho at 215, 796 P.2d at 92 (citations omitted).[2] Finally, even if an action survived the death of either party, common law required that the action be revived by filing a new action, rather than continuing the original one. Moon v. Bullock, 65 Idaho 594, 600, 151 P.2d 765, 767 (1944).
 
 
 11
 In order to alleviate the harshness of these common law rules regarding survival, Idaho enacted legislation which modified those rules in three ways. First, in 1881, the Idaho legislature created a wrongful death action for the benefit of the relatives or dependents of the decedent, which now reads in part:
 
 
 12
 (1) When the death of a person is caused by the wrongful act or neglect of another, his or her heirs or personal representatives on their behalf may maintain an action for damages against the person causing the death, or in case of the death of such wrongdoer, against the personal representative of such wrongdoer, whether the wrongdoer dies before or after the death of the person injured.
 
 
 13
 Idaho Code § 5-311 (1995).[3] It is well-settled under Idaho law that § 5-311 "did not create a right for a survival action, but a new cause of action for the benefit of the heirs." Vulk v. Haley, 112 Idaho at 858, 736 P.2d at 1312 (citing Russel v. Cox, 65 Idaho 534, 148 P.2d 221 (1944)). Second, Idaho enacted § 5-327 which abrogated the common law rule regarding the non-survivability of an action after the tortfeasor's death: "Causes of action arising out of injury to the person or property, or death, caused by the wrongful act or negligence of another, except actions for slander or libel, shall not abate upon the death of the wrongdoer." Idaho Code § 5-327 (1995). Third, § 5-319 permits the victim's personal representative to continue the action after the death of the victim without filing a new action, provided that the cause of action is one that survives under statute or common law:
 
 
 14
 An action or proceeding does not abate by the death or any disability of a party, or by the transfer of any interest therein, if the cause of action or proceeding survive or continue. In case of the death or any disability of a party, the court, on motion, may allow the action or proceeding to be continued by or against his representative or successor in interest.
 
 
 15
 Id. § 5-319. " 'The statute [§ 5-319] is not a general survival statute; it still recognizes the general common-law rule that certain actions and causes of action die irretrievable with the death of a party.' " Moon, 65 Idaho at 600, 151 P.2d at 767 (quoting the trial court's decision with approval) (citing Kloepfer v. Forch, 32 Idaho 415, 184 P. 477 (1919); Macleod v. Stelle, 43 Idaho 64, 249 P. 254, 257 (1926)).
 
 
 16
 Though Idaho has created a wrongful death action and modified the survivability of actions where the tortfeasor dies, as well as permitted continuance of actions that survive, "the Idaho legislature has not enacted any statute specifically abrogating the common law rule of non-survival of causes of action ex delicto[4] in cases where the victim does before recovery." Evans v. Twin Falls County, 118 Idaho 210, 215, 796 P.2d 87, 92 (1990). Because no Idaho statute provides for the survival of the victim's cause of action after the death of the victim, § 73-116 requires that the common law rules remain in effect, which would extinguish Doe's action in this case.
 
 
 17
 Doe's Personal Representative attempts to evade controlling Idaho precedent and the strictness of the common law by arguing that Doggett v. Boiler Engineering & Supply Co., 93 Idaho 888, 477 P.2d 511 (1970) and Moon v. Bullock, 65 Idaho 594, 151 P.2d 765, permit the survivability of the cause of action if the damages include an injury which lessens the estate of the victim (i.e., medical expenses). The Representative's assertions and reliance on these cases are misplaced.
 
 
 18
 In Moon, two automobiles collided; one car was driven by Mr. Bullock and the other car was driven by Benjamin Moon. 65 Idaho at 598-99, 151 P.2d at 766. Mr. Bullock died, but Benjamin Moon sued his estate "to recover ... from the estate of the deceased [Mr. Bullock] damages to personal property and for personal injuries, loss of time during illness, for hospital bills and medical care." 65 Idaho at 599, 151 P.2d at 767. The Idaho Supreme Court framed the issues on appeal: "[F]irst, does the general common-law rule that a cause of action for tort abates with the death of the tort-feasor or upon the death of the person against whom the wrong was committed obtain ... and, second, what causes of action survive the death of either or both of the parties?" 65 Idaho at 599-600, 151 P.2d at 767.
 
 
 19
 In determining which types of actions survive the death of either party, the court quoted Macleod v. Stelle, 43 Idaho 64, 75, 249 P. 254, 257: " 'The later, and to me the better considered, cases have tended toward, and many of them have reached, the conclusion that the injuries (sic) of a personal nature which do not survive are such as injury to person ...; and that an injury which lessens the estate of the injured party does survive, and thus is assignable.' "[5] Moon, 65 Idaho at 601, 151 P.2d at 768. After analyzing the Idaho Constitution and §§ 5-311, 5-319 of the Idaho Code, the court concluded that " 'the rule of the common law that causes of action for pure tort ... expire with the death of either party thereto, has been and still is the law of this state.[6] 151 P.2d at 771 (quoting the trial court decision with approval).
 
 
 20
 However, this conclusion did not totally dispose of Benjamin Moon's claims because a section of the Idaho Code (§ 15-805), which is no longer in effect, permitted survival of a cause of action against the estate to recover damage to personal property, as a result of the tortfeasor's negligence. Therefore, the court affirmed the dismissal of Benjamin Moon's claims for "personal injuries, loss of time during illness, for hospital bills and medical care," but allowed him to seek recovery of "damages for loss of or destruction of personal property.[7] In so holding, the court quoted a relevant passage from Boyd v. Sibold, 7 Wash.2d 279, 109 P.2d 535, 539 (1941): " 'We are further of the opinion that the only direct damage to property of the estate in the instant case was the damage to the automobile, and that the hospital bills, doctors' bills, claim for lost wages, and claim for pain and suffering, where consequential damages flowing from the trespass or injury to the person of the deceased in his lifetime, for which no right of action survived at common law, being purely personal to the deceased and for which there is no recovery....' " 65 Idaho at 609, 151 P.2d at 772 (emphasis added). Therefore, contrary to the Representative's assertions, Moon supports the proposition that medical bills are purely personal and do not survive under common law.
 
 
 21
 The Representative's reliance on Doggett is also flawed because that case involved a statute which is not relevant to the inquiry before this Court. The Idaho Supreme Court in Doggett interpreted § 32-906 of the Idaho Code[8] as allowing causes of action under tort to become community property of both spouses, which may be asserted by the surviving spouse, even though the spouse who was the victim of the tort died prior to judgment. Doggett, 93 Idaho 888, 891-92, 477 P.2d 511, 514-15 ("... to the extent that there has been alleged, and the appellant can prove, damage to the community by way of depletion of community assets, reduction of the ability of the community to earn income, costs and expenses chargeable against community property, and the general damages for pain and suffering, such cause of action survives the death of the deceased spouse."). The applicability of this holding is restricted to the situation in Doggett where the surviving spouse wishes to assert a cause of action in tort which was personal to the deceased spouse. By contrast, in the present action, Doe's Personal Representative is not Doe's spouse.[9]
 
 
 22
 Furthermore, the Idaho Supreme Court's decision in Evans v. Twin Falls County, 118 Idaho 210, 796 P.2d 87, supports the inescapable conclusion that Idaho does not recognize the survivability of any claim that did not survive at common law where the victim died before judgment. In Evans, the victim sued the county for assault and battery, unlawful arrest, and violation of 42 U.S.C. § 1983; she sought punitive damages, as well as damages for emotional distress, medical expenses, and lost wages. 118 Idaho at 212, 796 P.2d at 89. During the pendency of her lawsuit, the victim died. Thereafter, the victim's estate joined the action and her husband filed a wrongful death claim. 118 Idaho at 212, 214, 796 P.2d at 89, 91. Though Idaho modified the common law by creating a wrongful death cause of action, the court noted that Idaho has not abrogated "the common law rule of non-survival of causes of action ex delicto in cases where the victim dies before recovery." 118 Idaho at 215, 796 P.2d at 92. Accordingly, the court concluded that "the district court did not err in ... dismissing any survival claim of the estate of [the victim] on the basis that her claims did not survive her death." 118 Idaho at 216, 796 P.2d at 93 (emphasis added).
 
 
 23
 Based upon this line of Idaho cases, we conclude that Idaho adhers to the common law rules of non-survivability, except with respect to wrongful death actions, see § 5-311, and actions against the estate of the tortfeasor, see § 5-327. Moreover, contrary to the Representative's assertions, no Idaho Supreme Court decision stands for the proposition that damages flowing from the victim's personal injury which lessen the victim's estate survive the death of the victim. In fact, as discussed above, Moon rejected that assertion. Therefore, we find that the non-survivability of the decedent's tort cause of action includes all consequential damages flowing from the tortious conduct.[10] As a result, Doe's tort cause of action was extinguished by his death, and damages for his pain and suffering, and medical expenses do not survive his death.[11]
 
 CONCLUSION
 
 24
 Because Doe's cause of action abated at his death, Appellees' Joint Motion to Dismiss Doe's Appeal is GRANTED and this appeal is DISMISSED as moot. Therefore, we do not reach the merits of Doe's claims on appeal.
 
 
 
 *
 The Honorable Robert E. Jones, United States District Judge, District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Factor VIII is derived from human blood and is produced by a process called "plasmapheresis." Blood is taken from a donor and spun in a centrifuge to separate the plasma from the red blood cells and then the red blood cells are returned to the donor. The plasma is then pooled with plasma from other donors. Using a process known as "fractionation,": the Factor VIII clotting factor is removed from the plasma in a concentrated form termed "cryoprecipitate." Finally, applying a process called "lyophilization," Factor VIII is extracted from the cryoprecipitate, sterile filtered, placed into vials, and freeze-dried. It is sold, by prescription, in this freeze-dried, powdered form
 
 
 [2]
 Dean Prosser summarizes and explains the above-cited common law rules:
 The common law of England enforced three restrictive rules concerning the death of a person in personal injury cases:
 (1) If the tortfeasor died before the victim recovered for the tort, the victim's right of action died with him.
 (2) If the victim of a tort himself died (from whatever cause) before he recovered in tort, the victim's right of action also died.
 (3) If the tortfeasor caused a victim's death, relatives and dependents of the victim who were deprived of financial support or who suffered emotional loss, had no cause of action of their own.
 The first two rules were said to be rules about "survival"--the cause of action, though once vested in the tort victim, did not survive either his death or that of the tortfeasor. These rules did not apply to contract actions, or even to all tort actions. Thus actions for damage to or conversion of personality did survive, and restitution was available to prevent unjust enrichment of a defendant who had received tangible benefits from his tort. But there was no survival of the action after the death of either party in the case of torts ... affecting the person, such as assault and battery, false imprisonment, medical malpractice, or other negligent personal injuries, even though the negligence was a breach of contract.
 ... The third rule was not concerned with the survival of the victim's cause of action. It went much farther and denied a cause of action against the tortfeasor to the spouse, child or other dependents of the victim.
 W. Page Keeton Et Al., Prosser and Keeton on the Law of Torts § 125A, at 940-41 (5th ed. 1984) (citations omitted).
 
 
 [3]
 " 'We deem it well-settled that statutes authorizing actions for wrongful death are remedial in nature, designed to alleviate the harsh rule of common law that if an injured person died, his cause of action ceased to exist.' " Vulk v. Haley, 112 Idaho at 858, 736 P.2d at 1312 (quoting Vulk v. Baldazc, 103 Idaho 570, 573, 651 P.2d 11, 14 (1982))
 
 
 [4]
 In both the civil and the common law, obligations and causes of action are divided into two classes--those arising ex contractu (out of contract), and those ex delicto. The latter are such as grow out of or are founded upon a wrong or tort." Black's Law Dictionary 567 (6th ed. 1990). "As a general rule, in the absence of a statute providing otherwise, causes of action ex contractu survive while causes ex delicto do not." Kloepfer v. Forch, 32 Idaho 415, 418, 184 P. 477, 477
 
 
 [5]
 In MacLeod, the issue was actually whether the cause of action was assignable, but as noted by the court, "[t]he assignability of a cause of action is by authorities intimately associated with, and in most cases held to depend upon, the same principle as the survival of a cause of action." 43 Idaho at 75, 249 P. at 257. The court held that an injury suffered through fraud, which resulted in diminution of the estate of the injured party, constituted an injury to property which survived the death of the victim, and thus was assignable. 43 Idaho at 75, 249 P. at 257
 
 
 [6]
 Of course, this holding has been slightly altered by the legislative enactment of § 5-327, which now allows survival of actions after the death of the tortfeasor, provided that the victim asserts his right of action against the tortfeasor's estate before the victim's death
 
 
 [7]
 "In my opinion there is no escape from holding, under the provisions of sec. 15-805, I.C.A., that an action for the destruction of personal property caused by the negligence of a tort-feasor survives the death of the tort-feasor, although it would not have survived at common law, and a cause of action may be maintained against the legal representatives of the deceased tort-feasor for damages so caused by reason of the deceased tort-feasor's negligence, if any." Moon, 65 Idaho at 610, 151 P.2d at 772 (citation omitted)
 
 
 [8]
 At the time of the Doggett decision in 1970, § 32-906 provided in pertinent part:
 All other property acquired after marriage by either husband or wife, including the rents and profits of the separate property of the husband and wife, is community property, unless by the instrument by which any such property is acquired by the wife it is provided that the rents and profits thereof be applied to her sole and separate use; in which case the management and disposal of such rents and profits belongs to the wife, and they are not liable for the debts of the husband.
 Doggett, 93 Idaho 888, 891, 477 P.2d 511, 514 (quoting § 32-906).
 
 
 [9]
 Moreover, the holding in Doggett is questionable after subsequent Idaho Supreme Court decisions. For instance, in Rogers v. Yellowstone Park Co., 97 Idaho 14, 20, 539 P.2d 566, 572 (1975), the court held that "general damages for pain and suffering and emotional distress [are] the injured spouse's separate property," not community property
 Second, in Vulk v. Haley, 112 Idaho 855, 858, 736 P.2d 1309, 1312, the court concluded that Idaho has created only a wrongful death cause of action for the benefit of surviving heirs, rather than a survival action based upon the rights of the decedent. Therefore, the father of the decedent could only pursue an action on his own behalf under the wrongful death statute, which does not permit recovery of damages that are personal to the decedent and not suffered by the survivors, like the decedent's pain and suffering. 112 Idaho at 858-59, 736 P.2d at 1312-13.
 Finally, in Evans v. Twin Falls County, 118 Idaho 210, 216, 796 P.2d 87, 93, the court recognized that the part of the Doggett opinion which held that § 32-906 provided that pain and suffering was community property rather than separate property of the injured spouse was overruled by Rogers v. Yellowstone. Accordingly, the court dismissed "any survival claim of the estate of [the decedent] on the basis that her claims did not survive her death." Evans, 118 Idaho at 216, 796 P.2d 93.
 
 
 [10]
 The Representative's argument that subrogation rights held by Doe's insurer for medical expenses cannot be extinguished by Doe's death is unavailing. " 'The right of subrogation is purely derivative as the insurer succeeds only to the rights of the insured, and no new cause of action is created. In other words, the concept of subrogation merely gives the insurer the right to prosecute the cause of action which the insured possessed against anyone legally responsible for the latter's harm.' " Stevens v. Fleming, 116 Idaho 523, 531-32, 777 P.2d 1196, 1204-05 (1989) (quoting 16 G. Couch, Couch Encyclopedia of Insurance Law, § 61:37 (2d ed. 1966); see also International Equipment Service, Inc. v. Pocatello Industrial Park Co., 107 Idaho 1116, 1119, 695 P.2d 1255, 1258 (1985) (" ... the subrogee stands in the shoes of the subrogor. As such the subrogee can acquire no greater rights than the subrogor possessed and is subject to the same burdens and limitations" (internal quotations omitted)). Therefore, Doe's insurer has no greater rights than Doe possessed after his death
 
 
 [11]
 Of course, Doe's heirs may pursue a wrongful death action under § 5-311, within two years after Doe's death, see § 5-219