IN THE SUPREME COURT OF THE STATE OF IDAHO
DOCKET NO.  36934

| | | |
|---|---|---|
| STATEWIDE CONSTRUCTION, INC., | ) | |
| | ) | |
| Plaintiffs-Respondents, | ) | Boise, January 2011 Term |
| | ) | |
| v. | ) | 2011 Opinion No.  18 |
| | ) | |
| SEQUOIA PIETRI, LUKE CRAWFORD, | ) | Filed:  February 7, 2011 |
| JIM CRAWFORD and MAGGIE | ) | |
| CRAWFORD, LONNIE R. KING and | ) | Stephen W. Kenyon, Clerk |
| CHARLENE KING, husband and wife, | ) | |
| LARRY MONKARSH, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| M&T MORTGAGE, FIRST HORIZON HOME | ) | |
| LOANS, ESTATE OF RAYMOND PIATT, | ) | |
| ANTHONY F. FRONTINO, GERRY LEE | ) | |
| IKOLA and ELLEN I. IKOLA, | ) | |
| | ) | |
| Defendants. | ) | |

.

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Valley County.  Hon. Michael R. McLaughlin, District Judge.

District court decision granting summary judgment, <u>affirmed</u>.

Evans, Keane, LLP, Boise for appellants.  Victor Villegas argued.

Cosho Humphrey, LLP, Boise, for respondents.  Mackenzie E. Whatcott argued.

_____

BURDICK, Justice

This case involves the interpretation and application of I.C. § 55-313 to the relocation of a private roadway/easement used for vehicular travel.  The district court granted summary judgment in favor of Statewide Construction, Inc. ("Statewide") in a declaratory judgment

proceeding, finding that Statewide, as the owner of the servient estate on which an express easement for vehicular travel was situated, could unilaterally relocate that easement, as that relocation did not injure the dominant estate holders. The dominant estate holders—Sequoia Pietri, Luke Crawford, Jim Crawford, Maggie Crawford, Charlene King and Larry Monkarsh (collectively "Appellants")—appeal, arguing that: (1) Idaho Code § 55-313 does not grant a servient estate holder the right to unilaterally relocate an express easement, and such relocation constitutes a *per se* injury; (2) the Statement of Legislative Intent for I.C. § 55-313 makes it clear that the legislature meant to exclude access roads that enter onto a public highway from unilateral relocation under I.C. § 55-313; (3) if I.C. § 55-313 does allow unilateral relocation of an express easement it is in violation of the "takings clause" of the Fifth Amendment to the United States Constitution, and its equivalent under Article I, section 14 of the Idaho Constitution, as it amounts to a taking of Appellants' property right for a private rather than public purpose; (4) even if the relocation were considered a permissible taking under the United States and Idaho Constitutions, I.C. § 55-313 is in violation of due process requirements, as it provides no mechanism for providing Appellants with just compensation for their loss; and (5) even if the foregoing arguments fail, the district court erred in granting summary judgment as there remains a genuine issue of material fact as to whether Appellants were injured by the relocation of their easement. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Statewide owns a parcel ("Parcel 1") consisting of approximately 15.18 acres, located in Valley County, Idaho. There are seven parcels of land located adjacent to Parcel 1, which hold express easements by deed over Parcel 1, allowing ingress and egress.

On May 31, 2005, Statewide applied for a Conditional Use Permit to develop a subdivision on Parcel 1, and that permit was subsequently issued. The permit required Statewide to construct a new roadway to provide access to the lots in the proposed subdivision. Statewide dedicated a seventy foot easement ("New Easement") and constructed a road, which is over three hundred feet away from the original easement ("Original Easement") being used by Appellants. Statewide intended for Appellants to use the New Easement, eliminating the Original Easement location, but Appellants did not consent to such relocation.

Statewide filed a declaratory judgment action on October 31, 2008, and a summary judgment motion on April 16, 2009, requesting that the district court declare that Statewide could

relocate the easement under I.C. § 55-313 without Appellants' consent. Appellants filed a cross-motion for summary judgment on May 26, 2009.

The district court issued a memorandum decision on July 15, 2009, granting Statewide's motion for summary judgment and denying Appellants' cross-motion. A final judgment was entered on September 2, 2009, and Appellants timely appealed on September 23, 2009.

## II. STANDARD OF REVIEW

As this Court wrote in *Mutual of Enumclaw Insurance, Co. v. Pedersen*:

> On appeal from the grant of a motion for summary judgment from a declaratory judgment proceeding, this Court employs the same standard as used by the district court originally ruling on the motion. On review, summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court liberally construes all disputed facts in favor of the non-moving party, and draws all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion. If reasonable people could reach different conclusions or draw conflicting inferences from the evidence, the motion must be denied. However, if the evidence reveals no disputed issues of material fact, the trial court should grant the motion for summary judgment.

133 Idaho 135, 138, 983 P.2d 208, 211 (1999) (internal citations omitted).

## III. ANALYSIS

The crux of this action is the interpretation of I.C. § 55-313, which is titled "Relocation of access" and provides as follows:

> Where, for motor vehicle travel, any access which is less than a public dedication, has heretofore been or may hereafter be, constructed across private lands, the person or persons owning or controlling the private lands shall have the right at their own expense to change such access to any other part of the private lands, but such change must be made in such a manner as not to obstruct motor vehicle travel, or to otherwise injure any person or persons using or interested in such access.

There are three questions before this Court. First, whether I.C. § 55-313 prohibits a landowner from relocating a private access road where that private access road enters onto a public roadway. Second, whether I.C. § 55-313 permits a servient estate holder to unilaterally move an expressly granted easement (where the easement is for motor vehicle travel) without the consent of the dominant estate holder(s), and if so whether the statute is in violation of the United States Constitution and the Idaho Constitution. Third, whether there are genuine issues of

3

material fact regarding whether Appellants have suffered an injury under I.C. § 55-313. These issues shall be addressed in turn.

**A. Idaho Code § 55-313 allows for the relocation of access less than a public dedication, whether or not the access road enters onto a public roadway.**

Appellants argue that the Statement of Legislative Intent for I.C. § 55-313 demonstrates that the legislature did not intend to allow for relocation of access roads where they immediately enter onto a public highway system. Statewide argues that I.C. § 55-313 is clear on its face, and as such, it is inappropriate to resort to any statutory construction or examination of legislative history.

In *City of Sun Valley v. Sun Valley Co*., this Court noted that "where the language of a statute is unambiguous, there is no need to consult extrinsic evidence. We have consistently held that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature." 123 Idaho 665, 667, 851 P.2d 961, 963 (1993). Furthermore, "[t]he most fundamental premise underlying judicial review of the legislature's enactments is that, unless the result is palpably absurd, the courts must assume the legislature meant what it said. Where a statute is clear and unambiguous the expressed intent of the legislature must be given effect." *Id*. (quoting *State*, *Dep't of Law Enforcement v. One 1955 Willys Jeep, V.I.N. 573481691*, 100 Idaho 150, 153, 595 P.2d 299, 302 (1979)).

Appellants cite to several cases which they claim demonstrate that this Court may examine legislative intent even absent ambiguity. *See Ada Cnty. Bd. of Equalization v. Highlands, Inc.*, 141 Idaho 202, 207, 108 P.3d 349, 354 (2005) ("A statute need not be ambiguous in order for this Court to examine the legislature's intent in enacting it."); *State v. Stover*, 140 Idaho 927, 931–32, 104 P.3d 969, 973–74 (2005) (acknowledging that a statute is unambiguous, but still considering public policy behind the statute and legislative history). In examining these cases, it is evident that although there have been cases in which this Court went on to consider public policy and legislative intent where a statute was unambiguous on its face, these considerations were never used to alter the plain textual meaning of a statute. *See also George W. Watkins Family v. Messenger*, 118 Idaho 537, 540, 797 P.2d 1385, 1388 (1990).

Idaho Code § 55-313 allows for relocation of access, where that access is "less than a public dedication." The phrase "less than a public dedication" is unambiguous. A public dedication may be made through either a statutory dedication or a common law dedication.

4

*Worley Highway Dist. v. Yacht Club of Coeur D'Alene, Ltd.*, 116 Idaho 219, 222, 775 P.2d 111, 114 (1989). Appellants offer no argument that the Original Easement has been dedicated to the public by Statewide as either a statutory or common law dedication, therefore the easement in question is not excluded from the scope of I.C. § 55-313. As I.C. § 55-313 is unambiguous and makes no reference to whether or not an access for motor vehicle travel is entering onto a public road, in limiting the applicability of said statute, Appellants' argument fails.[1]

**B. Idaho Code § 55-313 permits a servient estate holder to move an expressly granted easement without consent from the dominant estate holder(s).**

Appellants argue that—even where a property owner is permitted to relocate an access road—where an access road takes the form of an express easement it may not be moved without the consent of the dominant estate holder(s). Appellants contend that allowing such a relocation without consent is a *per se* injury to the dominant estate holder, and thus not permitted under I.C. § 55-313. Statewide argues that the district court correctly found that "if consent was required to relocate, [I.C. § 55-313] would simply say so. Instead, the statute provides for relocation so long as the easement does not obstruct motor vehicle travel or otherwise injure any person using the easement." The district court further reasoned that "if any unilateral relocation was *per se* injurious, section 55-313 and the language regarding injury to any person using the easement would be wholly ineffective."

Appellants argue that it is the majority common law rule that an express easement may not be relocated by either the dominant or servient estate holders without the consent of the other. The Arizona Supreme Court in *Stamatis v. Johnson* noted that it is an "almost universal rule" that an easement, once definitely established, cannot be changed by either the dominant or servient estate holder without the other's consent. 224 P.2d 201, 202–03 (Ariz. 1950). However, the Court in *Stamatis* also quoted 28 C.J.S., Easements, § 84, stating: "As a general rule, *in the absence of statutes to the contrary*, the location of an easement cannot be changed by either party without the other's consent, after it has been established . . . except under the authority of an express or implied grant or reservation to this effect." *Id*. at 203 (emphasis

---

[1] The Statement of Legislative intent reads: "It is the intent of the Legislature that the phrases, 'any access which is less than a public dedication' . . . shall not include any access that is a part of a public highway system." Even if this Court were to consider this statement, Appellants' argument is unpersuasive. Although the access road at issue here directly enters onto a public highway system, it cannot—as a privately-owned access road that is not open to use by the general public—be considered "part of" a public highway system.

added).  Thus, whatever the "almost universal rule" might be, the *Stamatis* Court recognized that such a rule may be altered by statute.[2]

Here, it is instructive to consider I.C. § 55-313 alongside I.C. §§ 42-1207 and 18-4308,[3] which allow for the relocation of irrigation ditches, canals, laterals, drains or buried irrigation conduits ("appurtenances") by the owner of the property upon which such appurtenances are located, where such relocation does not impede water flow or injure those using the appurtenance at issue.  Appellants acknowledge that much of the language in these two statutes is "strikingly similar" to the language of I.C. § 55-313.  However, both I.C. § 42-1207 and I.C. § 18-4308 require that "[t]he written permission of the owner of a ditch, canal, lateral, drain or buried irrigation conduit must first be obtained before it is changed or placed in buried pipe by the landowner" whereas I.C. § 55-313 contains no equivalent provision.  The inclusion of language requiring written permission of the easement owner in I.C. §§ 42-1207 and 18-4308, and the absence of such language from I.C. § 55-313, strongly suggests that the legislature did not intend to require the servient estate holder to gain the consent of the dominant estate holder(s) in order to move an access road.[4]

Appellants argue that the absence of the language requiring consent in I.C. § 55-313 should not be considered determinative on this issue as there are "a myriad of ways a private roadway is created" other than by easement, and I.C. § 55-313 was intended to address them all generally.  The only example of an alternative way to create an interest in a private access road that Appellants provide is that of a license to enter land, but as Appellants note, licenses are freely revocable and create no estate in lands.  *See State v. Bowman*, 124 Idaho 936, 945, 866 P.2d 193, 202 (Ct. App. 1993).  Where permission to use an access road is freely revocable there is no logical reason why the owner of the property upon which the road is located would need

---

[2] An example of such a statutory alteration may be seen in article 695 of the Louisiana Civil Code, which provides that:

> The owner of the enclosed estate has no right to the relocation of this servitude after it is fixed. The owner of the servient estate has the right to demand relocation of the servitude to a more convenient place at his own expense, provided that it affords the same facility to the owner of the enclosed estate.

[3] Idaho Code § 18-4308 is essentially identical to I.C. § 42-1207, except that I.C. § 18-4308 makes it a misdemeanor to relocate such an appurtenance in noncompliance with the statute.

[4] Prior to their amendment in 1994, I.C. §§ 42-1207 and 18-4208 did not require the consent of the appurtenance holder prior to relocation of the appurtenance by the servient estate holder.  S.L. 1994, ch. 151, §§ 1 and 2, pp. 345–47.  In several cases addressing the pre-1994 version of I.C. § 42-1207, the servient estate holder had relocated the appurtenance without consent of the appurtenance holder(s), and this Court implicitly acknowledged that such an action was permissible under the statute.  *See Simonson v. Moon*, 72 Idaho 39, 237 P.2d 93 (1951); *Savage Lateral Ditch Water Users Ass'n v. Pulley*, 125 Idaho 237, 869 P.2d 554 (1993).  For further discussion see section C below.

6

statutory authority to relocate that road. The property owner could simply revoke the license, relocate the road, and then renew the license.

Appellants argue that this Court's opinion in *Villager Condominium Ass'n v. Idaho Power Co.*, 121 Idaho 986, 829 P.2d 1335 (1992), demonstrates judicial recognition that unilateral relocation of an express easement is impermissible. The issue in *Villager* was whether Idaho Power, as the dominant estate holder, could relocate its express easement to install power lines underground by instead installing the lines above ground on cement pads. *Id.* at 987–88, 829 P.3d at 1336–37. *Villager* provides no guidance to the facts at hand for several reasons: (1) in *Villager* it was the dominant estate holder seeking to relocate the easement, not the servient estate holder, and it involved a change in the character of the easement, not mere location; and (2) the easement at issue in *Villager* was not an access road and I.C. § 55-313 was therefore inapplicable.

Appellants next cite *Turner v. Cold Springs Canyon Ltd. Partnership*, 143 Idaho 227, 141 P.3d 1096 (2006), arguing that this opinion demonstrates that this Court agrees with the majority position on unilateral easement relocation expressed in *Stamatis*. However, the discussion about relocation of an access road in *Turner* was dicta, as this Court held that the issue had not properly been raised on appeal. *Id.* at 229, 141 P.3d at 1098. In addition, neither party in *Turner* argued that I.C. § 55-313 applied.

Statewide in turn cites to *Benninger v. Derifield*, 142 Idaho 486, 129 P.3d 1235 (2006), as "the only published decision in Idaho that does address Section 55-313." Although the trial court in *Benninger* had found that the servient estate holder was entitled to modify or relocate an access road (driveway) without consent from the dominant estate holder, that issue was not raised on appeal. *See id.* at 488, 129 P.3d at 1237. Therefore, the *Benninger* case is of no precedential value here.

If the legislature had intended for the unilateral relocation of an easement to constitute a *per se* injury under I.C. § 55-313, it would have required consent from the dominant estate holder(s), as it did in I.C. §§ 42-1207 and 18-4308.[5] It is true that, as a general principal, "the

---

[5] At the time that I.C. § 55-313 was enacted in 1985 neither I.C. §§ 42-1207 nor 18-4308 required the written consent of the appurtenance owner in order for the landowner to relocate or bury that appurtenance. S.L. 1985, ch. 252, § 1. However, in 1994 these statutes were amended to require that:

> In the event that the ditch, lateral, buried irrigation conduit or canal is owned by an organized irrigation district, canal company, ditch association, or other irrigation entity, the written

7

rules of common law are not to be changed by doubtful implication." *Moon v. Bullock*, 65 Idaho 594, 607, 151 P.2d 765, 771 (1944) (quoting *Congdon v. Congdon*, 200 N.W. 76, 82 (Minn. 1924)), *superseded on other grounds by statute*, I.C. § 5-327, *as recognized in Doggett v. Boiler Eng'g & Supply Co.*, 93 Idaho 888, 890, 477 P.2d 511, 513 (1970). However, "where the implication is obvious it cannot be ignored." *Id.* *See also Baker v. Ore-Ida Foods, Inc.*, 95 Idaho 575, 583, 513 P.2d 627, 635 (1973) ("Where the clear implication of a legislative act is to change the common law rule we recognize the modification because the legislature has the power to abrogate the common law."). If I.C. § 55-313 requires consent from all interested parties prior to the relocation of an access road easement, there would be no reason for that statute to have been enacted; access road easements could already be relocated if all interested parties agreed. This Court has noted that "it is incumbent upon a court to give a statute an interpretation that will not render it a nullity." *Hecla Mining Co. v. Idaho State Tax Comm'n*, 108 Idaho 147, 151, 697 P.2d 1161, 1165 (1985). *See also State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004) (noting that the Court disfavors statutory construction that leads to absurd results). Therefore, we hold that the clear implication of I.C. § 55-313 is to allow for the relocation of an access road where such relocation does not injure interested parties—even where that road takes the form of an express easement—without the consent of the dominant estate holder(s).

Appellants next argue that if Statewide is permitted to use I.C. § 55-313 to unilaterally relocate the Original Easement it will have the same impact as vacating that easement. Appellants state that this vacation would deprive them of a recognized property interest without compensation in violation of both Article I, § 14 of the Idaho Constitution and the Fifth Amendment (Takings Clause) of the United State Constitution.

Article I, section 14 of the Idaho Constitution is entitled "Right of Eminent Domain" and provides, *inter alia*, "[p]rivate property may be taken for public use, but not until a just compensation, to be ascertained in the manner prescribed by law, shall be paid therefor." The

---

permission of the entity must first be obtained before a ditch, lateral, buried irrigation conduit, or canal is changed or placed in buried pipe by the landowner.

S.L. 1994, ch. 151, §§ 1 and 2, pp. 345–47. In 2002, the wording of the relevant portion of each statute was amended to read: "[t]he written permission of the owner of a ditch, canal, lateral, drain or buried irrigation conduct must first be obtained before it is changed or placed in buried pipe by the land-owner." S.L. 2002, ch. 115, §§ 3 and 4, pp. 327–30. If the legislature wished to require the consent of an easement holder under I.C. § 55-313 it would have altered that statute as well.

Fifth Amendment of the United States Constitution prohibits the taking of private property "for public use; without just compensation." Appellants cite no authority for the proposition that the relocation of an easement constitutes a taking of property. In fact, in authorizing the relocation of the access roads, I.C. § 55-313 expressly provides that "such change must be made in such a manner as not to obstruct motor vehicle travel, or to otherwise injure any person or persons using or interested in such access." As such, any relocation authorized under I.C. § 55-313 will provide the dominant estate holders with the same benefit they were entitled to under the easement in its original location. Therefore a takings analysis is unnecessary.

**C. There are no genuine issues of material fact as to whether Appellants have suffered an injury due to the relocation of the express easement, under I.C. § 55-313.**

Appellants allege that, in addition to their claimed *per se* injuries, they will suffer specific injuries if the Original Easement is relocated. Specifically, Appellants allege that: (1) the New Easement provides less direct access to Appellants' parcels, and as appellants King, Pietri and Crawford drive heavy equipment across the easement in the course of business, this will create safety problems for residents in the area; (2) appellant King has a business contract with the other appellants to plow snow from the Original Easement, which will effectively be nullified if the relocation occurs; and (3) appellant Monkarsh believes the New Easement location will make it more difficult to see oncoming traffic for purposes of accessing the public highway, creating a safety concern.

Statewide argues, and the district court found, that "[i]njury in the context of relocation of easements under section 55-313 contemplates a taking or lessening in value to the dominant estate holders" and there was no evidence of that type of injury here. In assessing what type of injury was contemplated in I.C. § 55-313, it is again useful to consider I.C. §§ 18-4308 and 42-1207, which have an injury provision materially identical to that found in I.C. § 55-313.[6] *See* Jonathan Burky, *Relocating an Easement Under Idaho Code § 55-313*, The Advocate, May 2010, at 21–23.

In *Simonson v. Moon*, 72 Idaho 39, 237 P.2d 93 (1951), this Court first addressed the issue of what the term "injury" means in the context of I.C. § 42-1207. The version of I.C. § 42-

---

[6] The relevant portion of I.C. §§ 42-1207 and 18-4308 provides that "such change must be made in such a manner as not to impede the flow of the water therein, or to otherwise injure any person or persons using or interested in such ditch, canal, lateral, drain or buried irrigation conduit." The relevant portion of I.C. § 55-313 states that "such change must be made in a manner as not to obstruct motor vehicles travel, or to otherwise injure any person or persons using or interested in such access."

1207 at issue in *Simonson* did *not* require the written permission of an appurtenance owner prior to the relocation of that appurtenance by the servient estate holder. Rather, the servient estate holder was free to relocate the appurtenance where such relocation would not impede water flow nor injure persons interested in the use of such appurtenance. *Id*. at 45, 237 P.2d at 97. Noting that "[p]rior to the enactment of [I.C. § 42-1207] the right of the owner of a servient estate to change the place or location of an easement did not exist", the *Simonson* Court found that the burden was on the servient estate holder to demonstrate that the relocation would not decrease water flow or injure the interested parties. *Id*. at 45–46, 237 P.2d 97. Ultimately, this Court concluded:

> We do not hold that a mere increase in the length of ditch, or other conditions, which result in a comparatively unimportant increase in maintenance, would be sufficient to deny the servient owner the right to change the location of a ditch. But, when such an increase in burden is accompanied by the requirement of rotating the use of the ditch, or other inconvenience, then the impediment to the flow of the water will be considered substantial and an injury within the statute.

*Id*. at 46, 237 P.2d at 97–98.

In *Savage Lateral Ditch Water Users Ass'n v. Pulley*, the servient estate holder relocated a lateral ditch, which resulted in a decreased water flow to downstream water users. 125 Idaho 237, 240, 869 P.2d 554, 557 (1993). The downstream water users filed for declaratory and injunctive relief and sought to return the lateral ditch to its original location. *Id*. at 240–41, 869 P.2d at 557–58. This Court concluded that:

> [a]lthough a minor increase in the length of a ditch or other conditions which negligibly increase its maintenance are insufficient injuries by themselves to constitute a violation of the statute, when such burdens are accompanied by forced rotation of ditch use or other inconvenience, the combined injuries are sufficient. When relocation of a ditch forces its users to rotate their use of the ditch with other users, this is an injury to them within the meaning of the statute.

*Id*. at 243–44, 869 P.2d at 560–61 (internal citation omitted). It is worth noting that *Savage* also involved the pre-1994 version of I.C. § 42-1207, and thus did not require the written consent of an appurtenance owner prior to a servient estate holder's relocation of that appurtenance.

An examination of these two cases reveals that this Court has taken a utilitarian approach to relocation of appurtenances. A mere increase in length or maintenance for an appurtenance does not constitute an injury under I.C. § 42-1207, but where the appurtenance holders' ability to obtain water—or their historical flow-rate of water—is restricted, this Court will find that an injury has occurred. As such, in determining whether there is an issue of material fact as to an

10

injury under I.C. § 55-313, this Court should consider whether the relocation of the Original Easement to the New Easement location has impaired the ability of the Appellants to access their property (the purpose for which they hold their easement).

The district court erred in stating that an injury under I.C. § 55-313 is limited to a taking or a lessening in value of the dominant estate. However, upon an independent review of the Appellants' alleged injuries, assuming Appellants' allegations are true, we find no genuine issue of material fact existed as to Appellants suffering an injury under I.C. § 55-313 as a result of the relocation of the access-road easement.

As for the first alleged injury, the fact that it may take Appellants slightly longer to access their property from the New Easement than it did from the Original Easement is irrelevant; this is not an impediment to the use of the easement as an access road, and is not an injury under I.C. § 55-313. As to the related safety concern, that driving heavy equipment which is often covered in dirt and mud will create a safety hazard, there is no explanation as to why this would be a greater hazard where Appellants are using the New Easement to access public roads rather than the Original Easement. Although the New Easement shall be dedicated to public use and therefore have increased traffic, Appellants are using the Original Easement to access the public roads; they are already driving this equipment on highly travelled roads.

Second, the damage to the contract to plow snow is not related to the interest for which Appellants hold the easement, the access to their property. Loss of an incidental economic benefit to one easement holder—where such benefit is not related to the purpose for which that easement is held—is not an injury, for purposes of I.C. § 55-313.

Finally, Appellants contend that the New Easement is less safe in that it is more difficult to see oncoming traffic. Valley County issued a Conditional Use Permit providing for the construction of an access at the New Easement location, clearly indicating that the County does not consider that location to present serious safety concerns. In any event, this type of decrease in convenience would be akin to a minor increase in maintenance costs, which was found not to constitute an injury under I.C. § 42-1207.

## IV. CONCLUSION

We affirm the district court's grant of summary judgment in favor of Statewide. Idaho Code § 55-313 unambiguously permits the relocation of the access road at issue here, and does not require the consent of the dominant estate holders. That relocation does not constitute a

11

taking, and there is no genuine issue of material fact as to whether Appellants sustained an injury under I.C. § 55-313. Costs to Statewide.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, **CONCUR.**